# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RHONSHAWN JACKSON,            )
                              )
    Plaintiff,                )  Civil Action No. 18-32 Erie
                              )
  v.                          )
                              )
O'BRIEN, et al.,              )  Magistrate Judge Richard A. Lanzillo
                              )
    Defendants.               )

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

Pending before the Court is Defendants' motion to dismiss portions of Plaintiff's six-count Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).[1] Specifically, Defendants seek dismissal of Counts Five and Six of the Amended Complaint as to all Defendants named in those counts, as well as all claims against Pennsylvania Secretary of Corrections John E. Wetzel, Captain Jones, and Grievance Coordinator Tharp.[2] For the reasons discussed below, the Court will grant Defendants' motion but allow Plaintiff leave to amend certain claims where amendment may not be futile.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636(c).

[2] Tharp is included among six Defendants against whom Plaintiff seeks relief under Count Five, which asserts a claim for violations of Pennsylvania Department of Corrections policies and the "Pennsylvania Code of Ethics." Count Six asserts a claim for civil conspiracy against all Defendants, including Wetzel and Tharp. Counts One through Four of the Amended Complaint do not include Wetzel or Tharp as Defendants against whom Plaintiff requests relief and are not subjects of Defendants' pending motion.

1

## II. MATERIAL FACTS AND PROCEDURAL HISTORY

Plaintiff Rhonshawn Jackson, acting *pro se*, initiated this action by filing a motion to proceed *in forma pauperis* on January 8, 2018. ECF No. 1. Plaintiff filed his six-count Amended Complaint, which is the operative pleading for purposes of Defendants' motion, on June 11, 2018. ECF No. 17. In his Amended Complaint, Plaintiff alleges that during his incarceration at the State Correctional Institution at Albion ("SCI-Albion"), Defendant Brown assaulted, abused, and harassed him, and that the other Defendants either retaliated against him for filing litigation or grievances against Defendant Brown, or failed to prevent or address the acts of retaliation.[3] ECF No. 17 ¶ 13.

Plaintiff alleges that the retaliation began on September 2, 2016, when he was being transported within the facility by Defendant Brown, a correctional officer. Id. ¶ 14. Because Defendant Brown was the subject of several of Plaintiff's Prison Rape Elimination Act ("PREA") complaints, Plaintiff asserts that his transportation of Plaintiff violated a prison policy to keep PREA accusers and the subjects of their complaints separated. Id. During transport, Plaintiff saw Defendant Tharp, a grievance officer, and complained to her that Defendant Brown should not be transporting him due to the policy. Id. According to the Amended Complaint, Defendant Tharp did nothing and, shortly thereafter, Defendant Brown "denied [Plaintiff's] morning yard[.]" Id.

Plaintiff further alleges that on September 12, 2016, he was the subject of a misconduct hearing based upon an accusation that he had indecently exposed himself to a prison psychologist. Id. ¶ 16. Defendant Szelewski, a hearing officer, told Plaintiff that he had "pissed off a lot of good people" by filing a lawsuit against Defendant O'Brien, who was a good friend

---

[3] Plaintiff is currently incarcerated at the State Correctional Institution at Frackville.

of Defendant Szelewski. Id. Defendant Szelewski told Plaintiff that he was "guilty the minute [he] walked in here" and therefore would not be allowed to present witnesses, including prison staff. Id. Plaintiff was found guilty of misconduct and "did (30) days DC time." Id. (parentheses in original).

Plaintiff also alleges that he suffered three different acts of retaliation and harassment between October 4 and 6, 2016: Defendant O'Brien prevented Plaintiff from accessing the law library, Defendant Brown sexually harassed Plaintiff, and Defendant Brown threatened Plaintiff. Id. ¶¶ 17-21. Plaintiff was referred to two separate misconduct hearings as a result of his actions during these incidents. Id. ¶ 22-23. At one hearing, occurring on October 21, 2016, Defendant Szelewski reiterated his condemnation of Plaintiff's lawsuit. Id. Plaintiff was found guilty of sexual harassment, threatening an employee, and using abusive language, and sentenced to thirty days of "DC time." Id.

Between March 26, 2017 and April 18, 2017, Defendant Brown allegedly harassed Plaintiff three more times. Id. ¶ 30, 32-33. Plaintiff complained separately to Defendant Clark, Defendant Jones, Defendant Tharp, and Defendant Wetzel. Id. ¶ 29, 31, 34-35. Specifically, with regard to Defendant Wetzel, Plaintiff sent him a letter recounting "all of the retaliation he endured." Id. ¶ 35. Defendant Wetzel "'avoided notice' by having [Plaintiff's] letter forwarded to Amanda West, an assistant." Id.

On October 5, 2016 and November 7, 2016, Plaintiff tried to send letters to his mother to tell her about the retaliation he was experiencing; however, his letters failed to reach her. Id. ¶ 20, 24-26. Plaintiff concludes that Defendant Sissem intervened to prevent Plaintiff's mail from reaching his mother. Id. ¶ 27.

3

Based upon the foregoing allegations, Plaintiff's Amended Complaint asserts an Eighth Amendment claim against Defendant Brown pursuant to 18 U.S.C. § 1983 (Count One), a retaliation claim against Defendants Brown, Clark, Szelewski, O'Brien, and Sissem pursuant to 18 U.S.C. § 1983 (Count Two), a battery/sexual assault claim against Defendant Brown (Count Three), an assault claim against Defendant Brown (Count Four), a claim for violations of prison and DOC policies and the Pennsylvania Code of Ethics against Defendants Brown, Tharp, Clark, Szelewski, O'Brien, and Jones (Count Five), and a civil conspiracy claim against all Defendants (Count Six). Defendants filed the instant motion to dismiss Counts Five and Six, as well as all claims against Defendants Wetzel, Jones, and Tharp on June 26, 2018. ECF No. 19. Plaintiff filed a Brief and "Declaration" in opposition to the motion on July 26, 2018. ECF Nos. 22, 23. This matter is now ripe for review.

### III. STANDARD OF REVIEW

#### A. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C. Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a

complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same).

Because Plaintiff is proceeding as a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### B.     Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in Conley v. Gibson, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. Twombly, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a

plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the Twombly/Iqbal line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## IV.     ANALYSIS

In Count Five of his Amended Complaint, Plaintiff contends that prison officials violated prison policies DC-ADM 804, regarding the inmate grievance system and procedures, and DC-ADM 808, regarding abuse, sexual harassment and retaliation against inmates, as well as various provisions of the Pennsylvania Code of Ethics. In Count Six Plaintiff alleges that all Defendants conspired to deprive him of his civil and constitutional rights. Plaintiff's Response and

Declaration in Opposition also broadly alleges that Defendant Wetzel is liable for Plaintiff's injuries by virtue of his supervisory role within the prison system. Defendants respond that (1) Defendants Wetzel, Jones, and Tharp should be dismissed as Defendants because Plaintiff has failed to plead facts sufficient to establish personal involvement of any of these individuals in actionable conduct, and (2) Counts Five and Six fail to state a claim as a matter of law. Each of these arguments will be addressed in turn.

### A. Personal Involvement/Supervisory Liability Claims Against Wetzel, Tharp and Jones

Defendants Wetzel, Jones, and Tharp contend that they should be dismissed because Plaintiff has failed to allege their personal involvement in actionable wrongdoing. It is axiomatic that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013). Accordingly, each defendant must have played an "affirmative part" in the complained-of misconduct. Iqbal, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 358 F. App'x 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. See, e.g., Mearin v. Swartz, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

    **i.**     **Plaintiff's Amended Complaint and Other Submissions Fail to State a Claim of Personal Involvement or Supervisory Liability Against Defendant Wetzel.**

7

Plaintiff has not alleged that Defendant Wetzel was personally involved in any of the acts described in the Amended Complaint. Instead, a fair reading of the Amended Complaint reflects Plaintiff's assertion that Defendant Wetzel chose to be willfully ignorant regarding misconduct and retaliation perpetrated against him while he was incarcerated at SCI-Albion. Thus, it appears Plaintiff is attempting to assert a supervisory liability claim against Defendant Wetzel and, due to the liberality of the standard by which courts analyze *pro se* complaints, the Court will carefully analyze all of Plaintiff's submissions to determine whether, together, they state a claim of personal involvement or another basis for supervisory liability.

Where the defendants are supervisory prison officials, liability must still be based on "personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986); Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990). Nor can Section 1983 liability be predicated solely on the theory of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's actions); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-95 (3d Cir. 1997) (holding that § 1983 plaintiff is required to show that supervisor personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

Courts have identified two general instances in which either the conduct of a supervisor-defendant or the policies/procedures of a supervisor-defendant may amount to personal involvement and thereby warrant a finding of individual supervisory liability for a constitutional tort. First, supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Second, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).

Regarding the first "general instance," Plaintiff's submissions include no allegations that Defendant Wetzel personally violated Plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced to a subordinate's potentially unconstitutional conduct. Thus, the first "general instance" in which supervisory liability may attach is inapplicable.

Regarding the second "general instance," the Court finds it, too, is inapplicable. In order for supervisory liability to attach, Plaintiff must allege that Defendant Wetzel "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K., 372 F.3d at 586. The only allegations related to Defendant Wetzel are (1) Plaintiff mailed a letter to Defendant Wetzel complaining of SCI-Albion correctional officers' conduct, and (2) Defendant Wetzel maintains a system under which he does not personally review prisoner mail but instead has it forwarded to an assistant for review. Plaintiff

concludes that this system is designed so that Defendant Wetzel can avoid notice and personal involvement.

This argument is flawed. Defendant Wetzel, the Secretary of the DOC, is not constitutionally required to review and respond to individual prisoner complaints; instead, the DOC has established a formal grievance procedure, through which prisoner complaints flow. See DC ADM 804. This reduces the need for high ranking officials to review and respond to every prisoner complaint. Plaintiff has not alleged that Defendant Wetzel has delegated responsibility to an assistant who is incompetent to review prisoner mail or has systemically failed to appropriately respond to prisoner complaints. Moreover, Plaintiff has alleged no facts to support an inference that a systemic problem with the grievance system exists or that Defendant Wetzel is aware of or responsible for such an issue.

Accordingly, Plaintiff's conclusion that Defendant Wetzel created and maintains a system of deliberately avoiding notice is factually unsupported and legally irrelevant given the grievance process and procedures available to Plaintiff and other inmates. See, e.g., Sloan v. Pa. Dept. Corr., 2017 WL 9487087 (W.D. Pa. Aug. 16, 2017) ("Conclusory, vague, and speculative allegation of custom, policy or practice is insufficient under Twombly and Iqbal."). Because Plaintiff has failed to plead facts to support the applicability of either "general instance" of personal involvement of Defendant Wetzel, all claims against him in the Amended Complaint must be dismissed.

### ii. Plaintiff's Amended Complaint and Other Submissions Fail to State a Claim of Personal Involvement Against Defendants Tharp and Jones.

Plaintiff's allegations directed at Defendant Tharp, a grievance officer, appear to be based primarily upon her participation in the grievance review process. It is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to

be found personally involved in the alleged unlawful conduct." Mearin v. Swartz, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013); see also Mincy v. Chmielsewski, 508 F. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). Accordingly, courts have routinely dismissed civil rights allegations against prison officials whose only knowledge of the alleged violation stemmed from their participation in the grievance process. See, e.g., Beale v. Wetzel, 2015 WL 2449622, at *5 (W.D. Pa. May 21, 2015) (dismissing claims against senior prison officials because the only allegations against them arose in the context of their participation in an administrative appeal process); Mearin, 951 F.Supp. 2d at 782 (same); Rogers v. United States, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official."). To the extent Plaintiff's claims against Defendant Tharp are based upon her role in the grievance process, they fail to state a claim upon which relief can be granted.

Plaintiff does allege that he complained to Defendant Tharp that Defendant Brown should not be transporting him due to the policy restricting contact between an inmate who has filed a PREA complaint and the perpetrator of the alleged abuse. ECF No. 17, ¶ 13. Plaintiff further alleges that Defendant Tharp did nothing in response to this complaint. Id. While this alleged failure to act arguably falls outside of the grievance process, it provides no basis for a claim against Defendant Tharp. Defendant Tharp had no constitutional obligation to intervene in, or respond to, Plaintiff's informal complaint about Defendant Brown transporting Plaintiff within the prison. See, e.g. Stuart v. Lisiak, 645 F. App'x 197, 200 (3d Cir. 2016) (holding that a prison nurse lacked personal involvement when she declined to intervene in an inmate's

11

treatment, despite receiving the inmate's grievances claiming that the treatment was deficient). Moreover, Plaintiff's allegation that Defendant Tharp "suppressed all of his complaints" against Defendant Brown by failing to report "these patterns of abuse" similarly fails to support a constitutional claim. ECF No. 17, ¶ 17. Given that "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement," Mincy, 508 F. App'x at 104, a grievance officer's failure to recognize a pattern in an inmate's grievance complaints cannot be considered personal involvement in the underlying misconduct. Plaintiff has failed to allege facts sufficient to support a finding that Defendant Tharp was personally involved in the misconduct alleged in Plaintiff's Amended Complaint. Accordingly, she must be dismissed from this action.

The Court reaches the same conclusion with regard to Defendant Jones, the Captain of Security at SCI-Albion. Plaintiff alleges that Defendant Jones failed to investigate Plaintiff's complaints, and more broadly, abdicated his duties as security captain in the face of subordinate misconduct. While Plaintiff states that Defendant Jones typically investigates complaints of officer misconduct, he has failed to allege that Defendant Jones participated in or even was made aware of any the acts of which Plaintiff complains. This does not establish supervisory liability. See Leary v. Daeschner, 349 F.3d 888, 907 (6th Cir. 2003) (supervisory liability "must be based on more than the right to control employees. Likewise, simple awareness of employee misconduct does not lead to supervisory liability."); see also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) ("[A] mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement."). Because Plaintiff has failed to plead the personal involvement of Defendant Jones, he must also be dismissed from this action.

**B. Count Five of the Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted.**

The gravamen of Count Five of the Amended Complaint appears to be that Defendants failed to follow two internal DOC policies, as well as numerous provisions from the "Pennsylvania Code of Ethics" in their handling of Plaintiff's complaints and grievances against Defendant Brown. Defendants argue that state prison regulations do not create constitutional rights. Plaintiff responds by arguing that the DOC policies are "directly intertwined" with federal rights. Specifically, Plaintiff states that (1) DC-ADM 804 protects conduct similar to that protected by the First Amendment (the right to file a grievance and/or lawsuit), and (2) DC-ADM 808 protects rights similar to those protected by the Eighth Amendment (protection against cruel and unusual punishment). Significantly, Plaintiff does not allege that any of the Defendants interfered with Plaintiff's right to file complaints and grievances. Rather, he contends certain Defendants failed to respond properly to his complaints and grievances under DOC policies and ethical rules.

The Third Circuit has explained the relationship between state-level policy infractions and constitutional violations:

> Not all violations of state law rise to the level of constitutional error. Bishop v. Wood, 426 U.S. 341, 349 n.13, 96 S.Ct. 2074, 2080, n.13, 48 L.Ed.2d 684 (1976); Elkins v. United States, 364 U.S. 206, 223-24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); Screws v. United States, 325 U.S. 91, 108, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495 (1945); United States v. Scolnick, 392 F.2d 320, 323 (3d Cir.), *cert. denied sub nom.* Brooks v. United States, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968). In determining whether the violation of a particular state law deprived a defendant of his due process rights under the fifth amendment, we must ascertain whether the state law directly conferred a substantive right on the defendant or merely created an administrative plan to help the state regulate its officers' conduct. Slotnick v. Staviskey, 560

13

> F.2d 31, 34 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077, 98
> S.Ct. 1286, 55 L.Ed.2d 783 (1978) ("The simple fact that
> state law prescribes certain procedures does not mean that
> the procedures thereby acquire a federal constitutional
> dimension.") See also Screws, 325 U.S. at 108, 65 S.Ct. at
> 1038; Street v. Surdyka, 492 F.2d 368 (4th Cir. 1974).

United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981). The issue, therefore, is whether the regulations create an administrative plan to help the state regulate its officers' conduct, or whether the regulations directly conferred substantive rights. Here, Plaintiff's argument strays from this issue, and instead focuses on whether protected federal rights are directly intertwined with the state regulations.

Pleading deficiencies notwithstanding, Plaintiff cannot state a claim as a matter of law. Courts have routinely held that a violation of DC-ADM 804 does not give rise to a constitutional cause of action. See, e.g., Dantzler v. Beard, 2007 WL 44208, at *8 (W.D. Pa. Jan. 5, 2007); Bohm v. Straw, 2013 WL 85273, at *9 (W.D. Pa. Jan. 8, 2013). With regard to DC-ADM 808, the DOC's Prison Rape Elimination Act or "PREA" policy, Plaintiff has failed to cite any authority for the proposition that a violation thereof gives rise to a constitutional cause of action. Indeed, the Policy specifically belies such a proposition: "This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual." DC-ADM 808, p. 2. Due to the absence of any authority to support Plaintiff's position and the PREA Policy's explicit limiting language, the Court finds that DC-ADM 808 does not "directly confer[] a substantive right." Jiles, 658 F.2d at 200. The same conclusion applies to Plaintiff's vague references to the "Pennsylvania Code of Ethics." Count Five fails to state a claim as a matter of law and will be dismissed.

**C. Count Six of the Amended Complaint Fails to State a Civil Conspiracy Claim.**

In Count Six, Plaintiff alleges that all named Defendants conspired to deprive him of his civil and constitutional rights. Defendants correctly respond that Plaintiff's assertions are no more than recitals of the cause of action and conclusory statements. However, this Court must construe Plaintiff's Amended Complaint liberally. Accordingly, the Court will consider the factual allegations made elsewhere in Plaintiff's submissions to determine whether Plaintiff has stated a civil conspiracy claim.

In order to state a claim for a conspiracy, a plaintiff must present "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) (quoting Twombly, 550 U.S. at 556)). Further, the plaintiff "must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Id. at 179 (quoting Shearin v. E.F. Hutton Grp., Inc., 885 F.2d 1162, 1166 (3d Cir.1989)); see also Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) (stating that a conspiracy requires a meeting of the minds). Conclusory allegations are not entitled to the presumption of truth that ordinarily is applied during a court's Rule 12(b)(6) review of a complaint. McTernan, 577 F.3d at 531.

In this case, after carefully analyzing Plaintiff's submissions, the Court finds that Plaintiff has failed to plead facts from which an inference of a conspiracy may be drawn. The Amended Complaint itself lacks any factual allegations as to the time, place, or specific object(s) of the alleged conspiracy. Such facts are needed for a claim of conspiracy to survive a motion to dismiss. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("[s]uch allegations . . . must be made with appropriate particularity in that [they] must allege the particulars of conduct, time,

15

place, and person responsible."); see, e.g., Ulrich v. Corbett, 614 F. App'x 572, 574–75 (3d Cir. 2015) (upholding dismissal of a section 1983 complaint alleging conspiracy because "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.") (citing Twombly, 550 U.S. at 557). Instead, Plaintiff has asserted only conclusory allegations of a broad conspiracy, which are not entitled to any presumption of truth. McTernan, 577 F.3d at 531. Plaintiff's Response and Declaration similarly lack any factual allegations to fill the void of Plaintiff's Amended Complaint.

Because Plaintiff's submissions do not "assert facts from which a conspiratorial agreement can be inferred," Great W. Mining & Mineral Co., 615 F.3d at 178, Count Six of Plaintiff's Amended Complaint fails to state a claim and must be dismissed.

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

The Court finds that amendment of Count Five would be futile because Plaintiff cannot, as a matter of law, state a claim under any of the referenced regulations or ethics code. The Court also finds that amendment to state a supervisory liability claim against Defendant Tharp would be futile as her position and role as Grievance Coordinator is limited to the grievance process. Regarding Count Six and a potential claim of supervisory liability against Defendants Wetzel and Jones, the Court cannot conclude as a matter of law that amendment would be futile. Accordingly, Plaintiff may, within twenty (20) day of the entry of this Opinion and Order, file

further amended complaint in an attempt to state a viable civil conspiracy claim against some or all of the remaining Defendants and a potential supervisory liability claim against Defendants Wetzel and Jones. Plaintiff is reminded that an amended complaint "must be complete in all respects. It is a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." <u>Williams v. Ferdarko</u>, 2018 WL 3653272, at *1 n. 1 (W.D. Pa. Aug. 1, 2018) (quoting <u>Young v. Keohane</u>, 809 F.Supp. 1185, 1189 (M.D. Pa. 1992)).

## VI. ORDER

For the reasons stated above, Defendants' Partial Motion to Dismiss (ECF No. 19) is granted. Count 5 of the Amended Complaint and the claims against Defendant Tharp are dismissed with prejudice. Count Six of the Amended Complaint and the claims against Defendants Wetzel and Jones are dismissed with leave to amend within twenty days of the date of this Opinion and Order.

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
United States Magistrate Judge

Dated: March 22, 2019