IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RHONSHAWN JACKSON, | ) | |
| | ) | Case No. 1:18-cv-32 |
| Plaintiff | ) | |
| | ) | RICHARD A. LANZILLO |
| vs. | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |
| SGT. O'BRIEN, et al., | ) | MEMORANDUM OPINION ON |
| | ) | DEFENDANTS' MOTION FOR |
| Defendants | ) | SUMMARY JUDGMENT |
| | ) | |
| | ) | ECF NO. 55 |

Plaintiff Rhonshawn Jackson, an inmate formerly confined at the State Correctional

Institution at Albion (SCI-Albion), commenced this action pursuant to 42 U.S.C. §1983 to

recover damages for alleged violations of his constitutional rights as secured by the First and

Eighth Amendments to the United States Constitution.  ECF No. 5.  Jackson also asserted state

law claims for assault and battery.  ECF No. 5.  Jackson filed an Amended Complaint on

June 11, 2018, reasserting those same claims.  ECF No. 17.  That document remains the

operative pleading in this action.

On June 26, 2018, Defendants successfully moved to dismiss Counts V and VI of the

Amended Complaint, as well as all claims against three Defendants: Secretary Wetzel, Grievance

Coordinator Tharp, and Security Captain Jones.  ECF Nos. 19, 39.  Jackson's remaining claims

allege that Corrections Officer Justin Brown engaged in sexually harassing conduct amounting to

cruel and unusual punishment, assault, and battery (Counts I, III, and IV, respectively), and that

Superintendent Clark, Hearing Examiner Szelewski, Sgt. O'Brien, and Capt. Sissem retaliated

against Jackson for reporting Brown's misconduct (Count II).  ECF No. 17.

Defendants have filed a Motion for Summary Judgment, Brief in Support, and Concise Statement of Material Facts. ECF Nos. 55-57. Jackson has filed a Brief in Opposition and Concise Statement of Material Facts, ECF Nos. 62, 63, and Defendants have filed a Response to Jackson's Concise Statement and a Reply Brief. ECF Nos. 64, 65. Having carefully reviewed the foregoing, the Court will grant Defendants' motion as to Counts I, III, and IV of the Amended Complaint.[1] The Court will deny summary judgment, <u>without prejudice</u>, as to Count II.

I.     Factual Background

Unless otherwise noted, the material facts of this case are undisputed.[2] On June 22, 2016, Defendant Brown strip searched Jackson prior to his morning visit to the recreational yard. ECF No. 58-1 at 2. According to Jackson, Brown, during the strip search, "started staring at [him] in a sexual manner," "licked his lips," and then "swiped [his] private parts in an aggressive manner." Id. Jackson later explained that he thought Brown was a homosexual because he gave him the "sexually attracted eye" and that it was "easy" to tell if a staff member was a homosexual, "you just had to look at the person." Id. at 12, 16.

Jackson filed a grievance against Brown on June 22, 2016, which the prison referred for a Prison Rape Elimination Act (PREA) investigation. Id. at 3 (forwarding Jackson's grievance to

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

[2] See ECF No. 57 (Defendants' Concise Statement); ECF No. 63 (Jackson's Concise Statement); ECF No. 64 (Defendants' Responsive Concise Statement). Jackson did not file a response to Defendants' Concise Statement. As such, to the extent that Jackson has failed to respond to any properly supported statement of material fact in Defendants' Concise Statement, it is deemed admitted. LCvR 56.E; See, e.g., Coleman v. Tice, 2018 WL 5724125, at *2 n. 3 (W.D. Pa. Oct. 10, 2018), adopted by 2018 WL 5722316 (W.D. Pa. Nov. 1, 2018). However, due to his pro se status, the Court will consider any facts properly asserted in Jackson's other submissions that specifically contradict Defendants' statement of facts, so long as they are supported by the record. Boyd v. Citizens Bank of Pa., Inc., 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014) (stating that "[t]o the extent Plaintiff's statement of 'fact' specifically controverts Defendant's, the Court will consider these facts in determining whether summary judgment should be granted").

the security department and the PREA coordinator for investigation). Tricia Brashor, a non-defendant, interviewed Jackson and Brown and determined that Jackson's sexual abuse allegation was "unsubstantiated." *Id*. at 16. Jackson received a notification that his PREA complaint had been rejected on August 22, 2017. *Id*. at 18. In the meantime, Jackson alleges that Brown visited his cell on several occasions and called him a "bitch" and a "rat" and stated that "he kills rats when he has rodent problems." ECF No. 17 ¶ 18.

In addition to his sexual harassment claim, Jackson asserts a host of retaliation claims. Prior to the events underlying this litigation, Jackson filed a separate lawsuit against O'Brien and Clark. *See Jackson v. Captain Carter*, 1:16-cv-133 (W.D. Pa. 2016). Jackson maintains that the Defendants in this action retaliated against him for filing that lawsuit and for reporting Brown's sexual harassment in the following ways: (1) Brown denied him a visit to recreational yard on one occasion and forced him to forgo recreational yard for several months by issuing threats; (2) Brown called him names and threatened to kill him; (3) several Defendants issued false misconducts; (4) an unidentified individual stole his "supplemental complaint"; (5) Sissem illegally read and copied Jackson's letters to his mother; (6) prison officials refused to properly investigate Jackson's PREA complaints; and (7) prison officials failed to "enforce[] . . . policies that were put in place to prevent plaintiff's injuries." ECF No. 17 ¶ 55.

II.     Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party.  *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must to go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements.  The Rule mandates summary judgment if a plaintiff then fails to make a sufficient showing on each of those elements.  When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily

renders all other facts immaterial." *Id.*, at 323. *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

Plaintiff is proceeding pro se. A filing from a pro se litigant is to be "liberally construed" and a "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89. 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 206 (1976)). Additionally, when considering a motion in a pro se plaintiff's case, a court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran's Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999). On a motion for summary judgment, however, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). Put another way, just because a non-moving party is proceeding pro se, they are not relieved of their "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, *1 (W.D. Pa. Sept. 21, 2012).

III.    Discussion

Jackson contends that Brown's conduct during the strip search on June 22, 2016 amounted to assault, battery, and unlawful sexual harassment in violation of the Eighth Amendment. He also accuses Brown and several other Defendants of engaging in unlawful retaliation in the wake of his complaints about the strip search and a prior lawsuit. Each of these claims will be addressed in turn.

A. Sexual harassment

Jackson first contends that Brown violated his constitutional right to be free from sexual abuse by "swiping" his hand along Jackson's genitals, licking his lips, and staring at him in a sexual manner during a routine strip search. The Court's analysis of this claim is governed by the Third Circuit's recent decision to "join numerous sister Circuits in holding that prison sexual abuse can violate the Constitution." *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018). Speaking in "plainest terms," the Court emphasized that the "sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment" because it "invades the most basic of dignity interests: to be treated as a human being." *Id.* (quoting *Crawford v. Cuomo*, 796 F.3d 252, 260 (2d Cir. 2015)). Simply put, such abuse is "not part of the penalty that criminal offenders pay for their offenses against society." *Id.* (quoting *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997)).

Prior to the Third Circuit's decision, courts had analyzed sexual abuse claims against prison officials through the prism of "the Supreme Court's excessive force precedents and its holding in *Farmer v. Brennan* that sexual assaults of inmates by inmates can implicate the right to be free from cruel and unusual punishment." *Id.* at 474 (citing *Boddie*, 105 F.3d at 861). In *Ricks*, the Third Circuit confirmed that the *Farmer* framework for excessive force claims "encompass[es] claims for sexual abuse and harassment by prison officials as well." *Id.* (citing *Boddie*, 105 F.3d at 861). This framework requires a plaintiff to satisfy both a subjective and an objective element. *Id.* at 473 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). In other words, "the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind." *Id.* at 475.

To evaluate the subjective prong, a reviewing court must consider "whether the official had a legitimate penological purpose or if he acted 'maliciously and sadistically for the very purpose of causing harm.'" *Id.* at 475 (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In the sexual abuse context, "[t]he nature of the violative conduct itself will often be enough to demonstrate the prison official's culpable state of mind." *Id.* For example, "if . . . the officer intentionally brings his or her genitalia into contact with the inmate in order to arouse or gratify the officer's sexual desire or humiliate the inmate, a violation is self-evident because there can be no penological justification for such contact." *Crawford*, 796 F.3d at 252. *See also Boddie*, 105 F.3d at 861 ("Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind."). On the other hand, where the contact is "incidental to legitimate official duties, such as a justifiable pat frisk or strip search," then it is less likely that the search was undertaken "to arouse or gratify the officer or humiliate the inmate." *Ricks*, 891 F.3d at 476 (quoting *Crawford*, 796 F.3d at 257-58).

In addition to satisfying the subjective element, an inmate must demonstrate that the incident was so objectively "intolerable and cruel" or "capable of causing harm" as to violate the Eighth Amendment. *Rick*, 891 F.3d at 475. As courts have frequently observed, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (quoting *Hudson*, 503 U.S. at 9). Rather, "the Eighth Amendment shields inmates from only those actions 'repugnant to the conscience of mankind.'" *Id.* (quoting *Hudson*, 503 U.S. at 10). Thus, "even if sexualized touching lacks a penological purpose, it may still fall below the threshold of constitutional cognizability based on a lack of objective seriousness." *Ricks*, 891 F.3d at 476,

477-78 (declining to impose a "zero tolerance" standard for "all minor sexualized touching in prison," such that all such "inappropriate touching is *per se* unconstitutional.").

    While the parameters of the objective prong of an Eighth Amendment claim are "difficult" to define, the Third Circuit has provided several useful guideposts. *Id.* First, while "a pattern of harassment and sexualized touching" may "more clearly" be considered objectively cruel and unusual, a properly stated Eighth Amendment sexual abuse claim "need not necessarily depend on the number of incidents." *Id.* at 474-75 (quoting *Boddie*, 105 F.3d at 861). To the contrary, "a single incident of sexual abuse, *if sufficiently severe or serious*, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Id.* at 474-75 (emphasis in original) (quoting *Crawford*, 796 F.3d at 257).

    Second, "sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation." *McCain v. Wetzel*, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." *Id.* (citing *Manon v. Garrison*, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Rather, "physical sexual assault or threats of physical assault is required for the objective element to be met." *Id.*

    Finally, the objective inquiry is "contextual" and "fact-specific," rather than mechanistic. *Id.* at 478 (declining to "craft a mechanical factors test for when sexual contact is objectively, sufficiently serious"). As explained by the Third Circuit:

> The scope, place and timing of the offensive conduct will bear on its severity, as will the details of the alleged contact. But it goes without saying that objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline. In context, including whether it violates established

> prison procedures, other sexualized touching may also be objectively
> serious.

*Id.*

After careful consideration of the record, pertinent caselaw, and "the scope, place, and timing of the offensive conduct," *Ricks*, 891 F.3d at 478, the Court concludes that Jackson has failed to establish either element of his sexual harassment claim. With respect to the subjective element, the parties agree that the alleged incident occurred during a legitimate strip-search, a factor that cuts sharply against Jackson. *See, e.g.*, *Ricks*, 891 F.3d at 476 ("We do not take issue with the focus of the analysis by other courts on whether the official performing the search had a penological purpose."); *Crawford*, 796 F.3d at 258 ("In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate."). There is no evidence that Brown exceeded the scope of an ordinary strip-search by momentarily touching Jackson's genitals, much less that he did so "to arouse or gratify" himself. *Crawford*, 796 F.3d at 257-58. Jackson's perception that Brown "looked" like a homosexual is insufficient to elevate "invasive touching that is permitted by law to ensure safety" into touching which violates the constitution. *Ricks*, 891 F.3d at 476.

As to the objective prong, there is no dispute that Jackson's Eighth Amendment claim is based on a single incident of physical contact rather than a pattern of misconduct. *See Ricks*, 891 F.3d at 474. Consequently, Jackson must demonstrate that his contact with Brown on June 22, 2016, was so "severe or serious" as to be "repugnant to the conscience of mankind.'" *Ricks*, 891 F.3d at 474 (quoting *Hudson*, 503 U.S. at 10). He has failed to do so. To the contrary, federal courts have routinely held that isolated incidents of similar or greater severity were insufficient

9

to support a cognizable Eighth Amendment claim.  *See, e.g., McIntyre v. Kellinger*, -- Fed. Appx. --, 2018 WL 3429964, at *1 (3d Cir. July 16, 2018) (holding that incident in which defendant dragged his hands down plaintiff's buttocks, gripped his buttocks, patted his thighs, and "squeezed [his] ass as if [he] was a woman" while whispering "in a sexual manner" during a pat-search was not objectively severe or serious to establish an Eighth Amendment violation); *Ricks*, 891 F.3d at 479 (suggesting that an "isolated, momentary" incident in which guard "rubbed his erect penis against [plaintiff's] buttocks through both men's clothing" was not sufficiently severe, but allowing opportunity to amend); *Boddie*, 105 F.3d at 861 (allegations that a female correction officer squeezed plaintiff's penis, said "[Y]ou know [you're] a sexy black devil, I like you," bumped into plaintiff with her breasts, and pinned him against the wall "with her whole body vagina against penis" were not sufficiently serious to amount to an Eighth Amendment violation); *Watson v. Wingard*, 2018 WL 2108316 (W.D. Pa. Jan. 31, 2018) (allegations that defendant gave plaintiff an "upper cut" to the groin with his forearm, "groped and massaged [his] penis," and examined plaintiff's "butt . . . like a doctor" did not amount to sexual abuse); *Hughes v. Smith*, 237 Fed. Appx. 756, 759 (3d Cir. 2007) (no Eighth Amendment violation where correctional officer allegedly touched the inmate's testicles through his clothing during a single pat-down frisk).  Brown's alleged behavior, even if inappropriate, is certainly no more egregious than the allegations addressed in many of the cases cited above.  Nor does it fall within the non-exclusive examples of misconduct identified in *Ricks*.  *See Ricks*, 891 F.3d at 478 (defining serious sexual contact to include "sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline").

In short, Jackson has failed to establish that he experienced conduct that was "repugnant to the conscience of mankind" or that the alleged violation took place under circumstances that suggest a "culpable state of mind." *Id.* at 475. Because Jackson cannot satisfy either element of his Eighth Amendment claim, summary judgment is appropriate.

B. Intentional state law torts (assault and battery)

In addition to his sexual harassment claim, Jackson asserts state law claims of battery and assault[3] against Brown based on: (1) the alleged "swiping" of his genitals during a strip search, and (2) Brown calling him a "bitch" and a "rat" and stating that he "kills rats when he has rodent problems." ECF No. 17 ¶¶ 58-68. Brown maintains that such claims are barred by the doctrine of sovereign immunity.

In general, employees of the Commonwealth of Pennsylvania acting within the scope of their duties enjoy sovereign immunity. *Walton v. Harkleroad*, 2016 WL 11480713, at *7 (W.D. Pa. Mar. 3, 2016) (citing 1 Pa. C.S. § 2310). The doctrine of sovereign immunity provides state officials with broad immunity from most state-law tort claims, "except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310. Although the Pennsylvania General Assembly "has waived sovereign immunity for claims of *negligence* against Commonwealth employees in a very limited and express set of circumstances," it has not done so for *intentional* torts. *Id.* (citing 42 Pa.C.S. § 8522(b)).[4] *Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Comm. Ct. 2013) ("[S]tate employees do not lose their immunity for *intentional* torts, provided they are acting

---

[3] Under Pennsylvania law, "an 'assault is an intentional attempt by force to do injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'" *Short v. Webb*, 2019 WL 4573254, at *7 (E.D. Pa. Sept. 20, 2019) (quoting *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (Pa. 1994)) (internal quotations omitted).

[4] Specifically, the General Assembly has waived immunity in cases of: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. C.S.A. § 8522.

within the scope of their employment.") (citations omitted, emphasis added).  Consequently,

sovereign immunity "shields Commonwealth employees from liability when their actions:

(1) cannot fit into one of the nine statutory exceptions in § 8522; (2) are not negligent; and (3)

occurred when acting within the scope of his or her employment." *Tibbens v. Snyder*, 2020 WL

5372097, at *5 (M.D. Pa. June 24, 2020) (citing *Kintzel v. Kleeman*, 965 F.Supp.2d 601, 606

(M.D. Pa. 2013)).

Assault and battery are intentional torts, neither of which falls within the statutory

exceptions enumerated in § 8522.  *See, e.g.*, *Brown v. Smith*, 2019 WL 2411749, at *4 (W.D. Pa.

June 7, 2019) (noting that assault and battery do not fall within the § 8522 exceptions).  Thus, so

long as he was acting within the scope of his employment, Brown is entitled to sovereign

immunity from Jackson's assault and battery claims.  *Walton*, 2016 WL 11480713, at *7;

*Picarella v. Brouse*, 2020 WL 207063, at *4 (M.D. Pa. Jan. 14, 2020).  "[C]onduct is within the

scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b)

it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least

in part, by a purpose to serve the master."  *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir.

2000) (alterations in original).  An employee may be found to act within the scope of his

employment "[e]ven where the employee acts intentionally or criminally."  *Tibbens*, 2020 WL

5372097 (citing *Brumfield*, 232 F.3d at 381).

In the instant case, there is no dispute that the alleged "swiping" took place during a

legitimate, mandatory strip search, and that the alleged verbal threats occurred during Brown's

shift as a guard within the prison.  As a corrections officer, Brown's job duties include ensuring

the safety and security of the prison by performing mandatory searches and patrols.  There is no

evidence that the offending strip search or comments occurred outside of the authorized time and

space of Brown's employment; indeed, the record indicates that such searches are regularly performed whenever an inmate leaves his cell to visit the recreational yard.  As such, Brown's conduct served, at least in part, his employer's interest in maintaining a safe and secure prison. Because Brown acted within the scope of his employment, he is entitled to sovereign immunity and summary judgment is warranted.

### C.  Retaliation

Jackson next avers that he was subjected to several discrete instances of retaliation after he submitted his PREA complaint concerning the incident with Brown.  To prevail on his retaliation claims, he must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action.  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)).

In their motion for summary judgment, Defendants maintain that Jackson cannot sustain any of his retaliation claims for a variety of reasons including, among other things, failure to exhaust his administrative remedies, the absence of causation, and the lack of an adverse action. In response, Jackson submitted a concise statement of material facts [ECF No. 63] and an appendix that listed, but did not include, over 70 exhibits [ECF No. 63-1] which he contends establish genuine disputes for trial as to each of his retaliation claims.  Unfortunately, none of the exhibits referenced in Jackson's appendix appear anywhere on the docket.  It is unclear whether Jackson ever mailed those documents to the Court or why they failed to make it into the record. However, their absence prevents the Court from determining whether the factual averments in

Jackson's concise statement are supported by admissible evidence and, if so, whether they create genuine issues of disputed material fact.

In order to properly resolve Jackson's claims, the Court concludes that Defendants' motion for summary judgment must be denied, without prejudice, to allow Jackson an opportunity to submit or resubmit his exhibits for the Court's consideration. While this is undoubtedly frustrating for all parties, Jackson's retaliation claims, unlike his sexual harassment and tort claims, are heavily fact-dependent and cannot be resolved without a fully developed record. Once Jackson has submitted his exhibits, Defendants may renew their motion for summary judgment on Jackson's retaliation claims by docketing a simple motion incorporating their prior arguments by reference and seeking summary judgment on that basis. Unless Jackson submits evidence that was not previously listed in his appendix, the Court will not entertain additional briefing from the parties and will expeditiously resolve the remaining claims in this action based on the parties' prior arguments.

IV.    Conclusion

For the reasons set forth above, the Court concludes that Defendants are entitled to summary judgment on Jackson's sexual harassment claim (Count I) and assault and battery claims (Counts III and IV). Accordingly, Defendants' motion [ECF No. 55] is GRANTED as to Counts I, III and IV of the Amended Complaint.

As to the retaliation claims at Count II, Defendants' motion is denied, without prejudice. Jackson is ordered to submit the exhibits referenced in his appendix [ECF No. 62-1] within thirty (30) days of the date of this Memorandum Opinion and Order. Defendants may renew their motion for summary judgment as to those claims within fourteen (14) days thereafter.

14

IT IS SO ORDERED.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: September 24, 2020