## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RHONSHAWN JACKSON,           )
         Plaintiff         )    Case No. 1:18-cv-00032-RAL (Erie)
                    )
      v.                )    Richard A. Lanzillo
                    )    United States Magistrate Judge
SGT. O'BRIEN, et al.          )
         Defendants   )    MEMORANDUM OPINION ON
                    )    DEFENDANTS' RENEWED MOTION
                    )    FOR SUMMARY JUDGMENT
                    )
                    )    ECF Nos. 55, 81

I.       Introduction

On September 24, 2020, the Court entered a Memorandum Opinion and Order, ECF No. 67, granting in part and denying in part Defendants' Motion for Summary Judgment. ECF No. 55. The Court entered summary judgment in favor of Defendants and against Plaintiff Rhonshawn Jackson on his sexual harassment claim (Count I) and assault and battery claims (Counts III and IV). However, the Court denied Defendants' motion, without prejudice, as to Jackson's retaliation claim (Count II) because several exhibits upon which Jackson relied in support of this claim had not been received by the Court or made a part of the summary judgment record. The Court determined that these exhibits had been omitted from the record through no fault of Jackson.[1] In denying the Defendants' motion as to Count II, the Court in effect deferred its decision on the merits of this claim pending receipt of the missing exhibits. In the meantime, Jackson provided the Court with copies of those exhibits he believes are material to this claim, and thereafter Defendants renewed their motion for summary judgment regarding the claim. *See* ECF Nos. 78, 81. Both Jackson and

---

[1] What happened to Jackson's original exhibits remains unclear. However, the Court is satisfied that Jackson took appropriate steps to cause them to be mailed to the Court for filing.

the Defendants agree that no further briefing is necessary and that the matter is now ripe for decision.[2]

Based upon the record, the Court will deny Defendants' motion as to (1) Jackson's retaliation claim against Defendant Sissem arising out of his alleged monitoring and copying of Jackson's correspondence, (2) Jackson's retaliation claim against Defendant Brown arising out his denial of yard privileges to Jackson, and (3) Jackson's retaliation claim against Brown based on threats of physical violence against Jackson. As to all other claims remaining in this action, the Court will grant Defendants' motion.

II.     Factual Background

Jackson's retaliation claim is based on allegations that the five remaining Defendants—Corrections Officer Justin Brown, Superintendent Clark, Hearing Examiner Szelewski, Sgt. O'Brien, and Capt. Sissem—retaliated against him because prior to the events underlying this litigation, Jackson had filed a separate lawsuit against O'Brien and Clark, *see Jackson v. Captain Carter*, 1:16-cv-133 (W.D. Pa. 2016), and because he reported acts of sexual harassment against Corrections Officer Brown. The following facts are taken from Defendants' Concise Statement of Material Facts, ECF No. 57, Jackson's Concise Statement of Material Facts, ECF No. 63, Defendants' Response to Jackson's Concise Statement, ECF No. 64, and Jackson's exhibits.[3] ECF No. 78. Unless otherwise noted, the material facts of this case are undisputed.

---

[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

[3] Although Jackson filed a Concise Statement of Material Facts, he did not respond to the factual assertions of Defendants' Concise Statement. In failing to do so, Jackson is deemed to have admitted any properly supported statement of material fact in Defendants' Concise Statement. LCvR 56(E); *see, e.g., Coleman v. Tice*, 2018 WL 5724125, at *2 n. 3 (W.D. Pa. Oct. 10, 2018), *report and recommendation adopted by* 2018 WL 5722316 (W.D. Pa. Nov. 1, 2018). However, due to his *pro se* status, the Court will consider any facts properly asserted in Jackson's other submissions that specifically contradict Defendants' statement of facts, so long as they are supported by the record. *See Boyd v. Citizens Bank of Pa., Inc.*, 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014).

On June 22, 2016, Officer Brown strip searched Jackson prior to his morning visit to the recreational yard. ECF No. 58-1 at 2. During the strip search, according to Jackson, Brown "started staring at [him] in a sexual manner," "licked his lips," and then "swiped [his] private parts in an aggressive manner." *Id.* Jackson later explained that he thought Brown was a homosexual because he gave him the "sexually attracted eye" and that it was "easy" to tell if a staff member was a homosexual, "you just had to look at the person." *Id.* at 12, 16.

Jackson filed a grievance against Brown on June 22, 2016, which the prison referred for a Prison Rape Elimination Act (PREA) investigation. *Id.* at 3 (forwarding Jackson's grievance to the security department and the PREA coordinator for investigation). Tricia Brasher, a non-defendant, interviewed Jackson and Brown and determined that Jackson's sexual abuse allegation was "unsubstantiated." *Id.* at 16. Jackson was notified on August 22, 2017 that his PREA complaint had been rejected. *Id.* at 18. In the meantime, Jackson alleges that Brown visited his cell on several occasions and called him a "bitch" and a "rat" and stated that "he kills rats when he has rodent problems." *Id.*

Jackson maintains that the Defendants in this action retaliated against him for a lawsuit he had previously filed against O'Brien and Clark and for reporting Brown's sexual harassment in the following ways: (1) Brown denied him a visit to recreational yard on one occasion; (2) Brown called him names and threatened to kill him; (3) several Defendants issued false misconducts; (4) an unidentified individual stole his "supplemental complaint"; (5) Sissem illegally read and copied Jackson's letters to his mother; (6) prison officials refused to properly investigate Jackson's PREA complaints; and (7) prison officials failed to "enforce[] ... policies that were put in place to prevent plaintiff's injuries." ECF No. 17, ¶ 55.

III.     Standards of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson,* 477 U.S. at 248; *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 257; *Brenner v. Local 514, United Bhd of Carpenters and Joiners of Am.,* 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tarter,* 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.,* 963 F.2d 599,600 (3d Cir. 1992); *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must to go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if a plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.,* at 323. *See also Harter v. G.A.F. Corp.,* 967 F.2d 846, 851 (3d Cir. 1992).

Plaintiff is proceeding *pro se.* When considering a motion in a *pro se* plaintiff's case, a court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran's Affairs,* 165 F.3d 244, 247-48 (3d Cir. 1999). On a motion for summary judgment, however, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook,* 238 F. Supp. 3d 712,717 (E.D. Pa. 2017) (citation omitted).  Put another way, just because a non-moving party is proceeding *pro se*, he is not relieved of his "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.,* 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz,* 2012 WL 4343176, *1 (W.D. Pa. Sept. 21, 2012).

IV.    Discussion

The only remaining claim in this action is Jackson's retaliation claim at Count II of the Amended Complaint.  As noted, Jackson identifies seven adverse actions or omissions as the factual basis for this claim: (1) Brown denied him a visit to recreational yard on one occasion; (2) Brown called him names and threatened to kill him; (3) several Defendants issued false misconducts; (4) an unidentified individual stole his "supplemental complaint"; (5) Sissem illegally read and copied Jackson's letters to his mother; (6) prison officials refused to properly investigate Jackson's PREA

5

complaints; and (7) prison officials failed to "enforce[] ... policies that were put in place to prevent plaintiff's injuries." ECF No. 17, ¶ 55. In their motion, the Defendants argue that Jackson failed to exhaust his administrative remedies as to many of the foregoing grounds or, alternatively, that each fails to support a viable retaliation claim as a matter of law. The Court will first address exhaustion, as it must, and then address the merits of Jackson's remaining retaliation claims. *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 304-05 (3d Cir. 2020) (explaining that once a defendant properly raises exhaustion, the district court must consider it as a threshold matter).

    A.  Exhaustion of Administrative Remedies as Required by the Prison Litigation Reform Act

    The Defendants argue that they are entitled to judgment as a matter of law on certain of Jackson's claims because he did not exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). 42 U.S.C. § 1997e(a). Jackson's failure to exhaust available administrative remedies is an affirmative defense that the Defendants must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)). At the summary judgment stage, the moving party must produce a record demonstrating his entitlement to judgment on the defense as a matter of law. Fed. R. Civ. P. 56(c)(1)(A). The most efficacious means to do so is for the defendant to produce the plaintiff's entire grievance record. *See, e.g., Green v. Maxa*, 2019 WL 1207535, at *6 (W.D. Pa. Mar. 14, 2019); *Jackson v. Superintendent Greene SCI*, 671 Fed. Appx. 23, 24 (3d Cir. 2016). Defendants may also provide an affidavit from a person with knowledge who affirms factually that the plaintiff failed to properly exhaust. *See* Fed. R. Civ. Pro. 56(c)(4). This is often an affidavit from a records custodian. *See Wiggins v. Correct Care Solutions, LLC*, 2017 WL 11550519, at *5, *7-8 (E.D. Pa. May 9, 2017); *Muhammad v. Sec'y Pa. Dep't of Corrs.*, 621 Fed. Appx. 725, 727 (3d Cir. 2015) (affidavit attesting plaintiff failed to appeal to SOIGA); *accord Martin v. Pa.*

*Dep't of Corrs.*, 395 Fed. Appx. 885, 886 (3d Cir. 2010) (affidavit stating plaintiff "never sought final review"). Here, the Defendants have included Jackson's lengthy grievance record and declarations from Keri Moore, Chief Grievance Officer of SOIGA, and DOC Chief Hearing Examiner Zachary Moslak in the appendix to their Motion for Summary Judgment. ECF No. 58-1, Ex. 23, p. 129; Ex. 24, p. 131.

The PLRA mandates that prisoners exhaust all available administrative remedies before bringing a lawsuit concerning conditions of their confinement. 42 U.S.C. § 1997e(a). This requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L Ed.2d 12 (2002). Proper exhaustion under the PLRA requires that an inmate "complete the administrative review process in accordance with the applicable procedural rules." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford*, 548 U.S. at 88, 126 S. Ct. 2378). These procedural rules are supplied by the individual prisons. *Jones*, 549 U.S. at 218, 127 S. Ct. 910; *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (determining whether "a prisoner has 'properly' exhausted a claim ... is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances"). Thus, whether a plaintiff has properly exhausted administrative remedies is determined according to the procedures and rules adopted by the plaintiff's correctional institution. As the Supreme Court has explained:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 107 U.S. at 217, 127 S.Ct. 910.

Three administrative remedy processes provide inmates in the custody of the Pennsylvania DOC with an avenue to challenge aspects of their confinement. *See McClain v. Alveriaz*, 2009 WL 346 7836, at *6 (citations omitted). Those policies are: (1) the Inmate Grievance Policy, DC-ADM 804; (2) the Inmate Discipline Policy; DC-ADM 801; and (3) the Administrative Custody policy, DC-ADM 802. *Id.* Which of these policies applies in a given instance depends on the subject matter of the inmate's grievance and his or her custody classification. DC-ADM 801 deals with inmate misconducts. DC-ADM 802 is similar but applies only to inmates who are in administrative custody. Finally, DC-ADM 804 provides the relevant grievance procedures for all inmate grievances not connected with a misconduct citation. *Id.* DC-ADM 801 and DC-ADM 804 are relevant here.

The DC-ADM 804 grievance system consists of three separate stages. First, within fifteen days of the incident, the prisoner is required to submit a written grievance for review by the facility manager or the regional grievance coordinator, who, in turn, must respond in writing within ten business days. Second, if the grievance is denied, the inmate must submit a written appeal to intermediate review within ten working days, and again the inmate is to receive a written response within ten working days. Finally, if the inmate remains dissatisfied following this second level outcome, he must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within fifteen working days, and the inmate will receive a final determination in writing within thirty days. *See Booth v. Churner*, 206 F.3d 289, 293 n. 2 (3d Cir. 1997), *aff'd* 532 U.S. 731 (2001).

The Defendants argue that they are entitled to summary judgment on three of Jackson's retaliation claims because he failed to exhaust them according to DC-ADM 804. Following the same numbering used above, they are Jackson's claims that: (4) an unidentified individual stole his "supplemental complaint"; (5) Sissem illegally read and copied Jackson's letters to his mother; and

(7) prison officials failed to "enforce[] ... policies that were put in place to prevent plaintiffs injuries." The Court will grant the Defendants' motion on each of these claims, as explained below.

    1. Claim 4: An unidentified individual stole Jackson's "supplemental complaint."

Jackson filed Grievance # 652836 on November 7, 2016. The first page of the grievance alleged that a non-defendant—Librarian Nyberg—lost a copy of a "supplemental complaint and some other paperwork" he sent to the library for copying, which "obstructed my access to the courts" in "retaliation for my lawsuit against the jail." ECF No. 58-1, Ex. 15, p. 89. The second page of the grievance is illegible. *Id.* Jackson adds that he gave the paperwork and cash slips to Officer Floyd for delivery to the library. *Id.*, p. 91, 93. Jackson identifies the "supplemental complaint" as a pleading for his lawsuit against "Sgt. O'Brien, Supt. Clark, and Ofcr. Brown." *Id.* Jackson claimed this was "the 2nd time that this paperwork has 'mysteriously disappeared' while Sgt. O'Brien was working." *Id.* This grievance was denied as frivolous. *Id.*, p. 92. When the grievance officer interviewed Officer Floyd, he said that he properly placed the paperwork into the prison mail system; Sgt. O'Brien said he had no knowledge of anything in the grievance or the paperwork; and Librarian Nyberg said she informed Jackson she had received paperwork  from him and that she personally returned the paperwork and copies to Jackson. *Id.*, p. 91.

Jackson appealed the denial of this grievance through each stage prescribed by DOC Policy DC-ADM 804, including to final review by SOIGA. His appeal was dismissed, however, because the second page of the grievance was not legible and thus did not comply with DC-ADM 804. ECF No. 58-1, Ex. 15, p. 100. Courts require strict compliance with DC-ADM 804's procedural rules for appealing grievances to SOIGA. *See Mack v. Klopotoski*, 540 Fed. Appx. 108, 113 (3d Cir. 2013) (inmate failed to exhaust when although he appealed his grievance to SOIGA, he failed to follow the grievance procedure when he included a handwritten copy of the intermediate appeal instead of a

photocopy as required); *Spearman v. Morris*, 643 Fed. Appx. 82, 84-85 (Mar. 1, 2016) (inmate failed to exhaust when SOIGA declined to hear final appeal because inmate failed to attach required documents to his appeal, including a copy of the initial grievance and subsequent responses). Jackson could have corrected his failure to include a legible copy of the second page of this grievance on appeal when notified by SOIGA, but he did not do so.  Therefore, Jackson did not fully exhaust his claim that someone stole his supplemental complaint as asserted in Grievance # 652836.

In any event, this claim also fails for reasons independent of Jackson's failure to exhaust Grievance # 652836.  Although Jackson disputes whether he ever received the copies he sought, *See* ECF No. 58-1, pp. 98-99, Librarian Nyberg is not a defendant in this action.  Moreover, the factual record does not support that she collaborated with any named defendant to retaliate against Jackson. The allegation that O'Brien was involved because he was working at the prison the day Jackson tried to send his paperwork to Nyberg is pure speculation. Accordingly, summary judgment will be entered in favor of the Defendants on Jackson's claim of retaliation for the loss of his supplemental complaint.

2. Claim 5: Sissem illegally read and copied Jackson's letters to his mother.

On November 6, 2017, Jackson filed Grievance # 707257 alleging that Sissem illegally read and copied Jackson's letters to his mother as an act of retaliation against him.  ECF No. 58-1, Ex. 22, p. 125.[4]  Captain Sissem denied the grievance because all monitoring of correspondence was done according to DOC policy.   According to an affidavit from Keri Moore—Assistant Chief of SOIGA—Jackson never appealed the denial of this grievance to final review.  ECF No. 58-1, Ex.

---

[4] Through discovery from his "civil cases," he was sent part of an investigative file the Pennsylvania DOC had opened on him.  It contained copies of letters he had sent his mother.  He never received notice that he was under investigation. The grievance says officials violated DOC policy DC-ADM 802 and 803 by failing to get the proper permissions to open his mail.  He says his letters to his mother were about other retaliation against him.  *Id.*

24, p. 131.  Jackson does not dispute this.  Instead, he claims he never had the opportunity to appeal because he did not receive notice of the denial of the grievance.  ECF No. 63, ¶¶ 22-23.  Jackson elaborates that the denial notice was sent to SCI-Albion, not SCI-Frackville where he was then incarcerated.  *Id.*  And he points out that the denial notice lists SCI-Albion under the heading "Facility."  *See* ECF No. 58-1, p. 127 (Ex. 22).  At the same time, the Court notes, the denial notice lists SCI-Frackville as Jackson's "Unit Location."  *Id.*  Thus, the record is unclear whether the denial notice was sent to Jackson's then-current location and received by him.

"[U]nder the Supreme Court's decision in *Ross v. Blake*, a prison grievance process is unavailable—and thus may be deemed exhausted—in three circumstances: (1) when the remedy 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  *Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) *quoting Ross v. Blake*, --- U.S. ----, 136 S. Ct. 1850, 1859–60, 195 L.Ed.2d 117 (2016).  "Fed. R. Civ. P. 56(e) does not allow a party opposing summary judgment to rely merely upon bare assertions, conclusory allegations, or suspicions."  *Maclary v. Carroll*, 142 Fed. Appx. 618, 620 (3d Cir. 2005) (rejecting argument that grievance process was unavailable when plaintiff "alleged that he filed unanswered and unprocessed grievances and letters to prison officials on the matter, but he did not offer any support for those bare assertions.").  Defendants argue that "[a]n assertion by a plaintiff that he filed a grievance that was lost, stolen, or that prison officials refused to answer is insufficient to show that the opportunity to exhaust administrative remedies was unavailable and overcome a motion for summary judgment predicated on the lack of exhaustion."  ECF No. 65, p. 1 (*citing Maclary v. Carroll*, 142 Fed.Appx. 618, 620 (3d Cir. 2005); *Dunbar v. Barone*, 2012 WL 259982

11

at*5-6 (W.D. Pa. 2012); *Keys v. Carroll*, 2012 WL 4472020 at *8 (M.D. Pa. 2012)).  While this proposition of law is generally correct, it does not apply here.  Jackson is not making a bald assertion that he filed a grievance that was lost or inexplicably disappeared.  Instead, he has offered evidence that plausibly supports a finding that the denial of Grievance # 707257 was sent to the wrong institution and as a result never received by him.  On the current record, a genuine dispute of material fact exists concerning this assertion.  As a result, the Court cannot determine as a matter of law whether Jackson's ability to appeal the denial of Grievance # 707257 was an "available" administrative remedy in this instance.  This determination will have to await further proceedings.[5]  Therefore, summary judgment is denied on Jackson's retaliation claim against Sissem arising out of his alleged monitoring and copying of Jackson's correspondence.  By separate order, the Court will schedule a hearing pursuant to *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013) to determine whether an appeal was a remedy available to Jackson following the denial of his grievance against Sissem.

> 3. Claim 7: Prison officials failed to "enforce[] … policies that were put in place to prevent plaintiff's injuries."  ECF No. 17, ¶ 55.

This claim arises out of conduct that Jackson grieved in Grievance #649612 on October 23, 2016.  Defendants argue that Jackson failed to exhaust his appeals from the denial of this grievance. ECF No. 57, p. 13.  Jackson filed this grievance demanding that SCI-Albion enforce a directive that he be separated from both Brown and Psychologist Sarah Eddy.  ECF No. 58-1, Ex. 14, p. 85. Jackson said this was necessary because of the two misconducts he had received, one for threatening to kill Brown and the other for the sexual harassment of PSS Eddy.  He said he fell in love with Eddy because of prison conditions, his mental illness, and Brown's harassment of him.  His

---

[5] The Court also notes alleged tampering with a prisoner's mail may satisfy the "adverse action" element of a retaliation claim.  *See Bailey v. Beard*, 2008 WL 4425588, at *9 (M.D. Pa. Sept. 29, 2008).

grievance asserted that he "should be transferred," presumably to another prison.  *Id.*  He admitted in a letter to Lt. Bashor that his grievances and complaints in general were an attempt to convince staff to transfer him to another prison.  ECF No. 58-1, Ex. 14, p. 86.

The declaration of Keri Moore attests that Jackson failed to appeal this grievance to SOIGA. ECF No. 58-1, Ex. 24, p. 131.  Jackson has not produced any evidence to contradict his assertion. Thus, Defendants have satisfied their burden of production, and Jackson has failed to create a genuine dispute regarding Jackson's failure to exhaust this claim.  Accordingly, summary judgment is granted in favor of the Defendants on Jackson's claim of retaliation based on their alleged failure to enforce the separation directive.

4.  Claim 3: Several defendants issued false misconducts.

The Defendants also seek summary judgment on Jackson's retaliation claim arising out of the issuance of four misconducts citations filed against him.  ECF No. 57, p. 12 (Brief in support). They argue that Jackson failed to exhaust three of the four misconducts:  Misconduct B941034, Misconduct B587295, and Misconduct B969823.[6]

"An inmate who has received a misconduct citation—*i.e.*—a violation of DOC rules and regulations with a resulting disciplinary measure—and either seeks to appeal that misconduct or allege a grievance in connection with the events surrounding that misconduct, must use DC-ADM 801." *McClain, Jr. v. Alveriaz*, 2009 WL 3467836, at *6 (E.D. Pa. Oct. 26, 2009).  First, an inmate who has been found guilty of a misconduct charge may file an appeal to the Program Review Committee (PRC) within fifteen days of the hearing.  *See Walker v. Security Office of SCI-Coal Tp.*, 2010 WL 1177338, at *2 (M.D. Pa. Mar. 25, 2010).  Then, within seven days of the PRC's decision, the

---

[6] Although the Defendants acknowledge that Jackson exhausted Misconduct B591166, they argue that any retaliation claim based on it fails on the merits.  ECF No. 58-1, Ex. 4, p. 23.  This is argument is addressed *infra*.

inmate may file a second level appeal to the Superintendent or Facility Manager.  Finally, the inmate

may make a final appeal to the Office of the Chief Counsel.  An inmate must properly complete all

these steps to exhaust administrative remedies.  *Id.*, at *3.  *See also Hinton v. Mark*, 2017 WL 4342204,

at *10 (W.D. Pa. Sept. 29, 2017) (inmate exhausts administrative remedies under DC-ADM 801 by

appealing all the way to the Chief Counsel); *McClain, Jr. v. Alveriaz*, 2009 WL 3467836, at *6 (E.D.

Pa. 2009) (same).

      Misconduct B941034 was submitted by Brown on October 5, 2016 and alleged that Jackson

had used threatening, profane, and sexually harassing language towards him.  This misconduct

citation "was dismissed without prejudice," *see* ECF No. 58-1, Ex. 11, p. 65, and was rewritten a few

days later as Misconduct B587295.  ECF No. 58-1, p. 68 (Ex. 12).  On October 25, 2016, the hearing

officer found Jackson guilty of threatening an employee or family member with bodily harm and

using abusive, obscene, or inappropriate language to an employee but not guilty of sexual

harassment.  ECF No. 58-1, p. 70 (ex. 12).  Misconduct B969823 charged Jackson with using

obscene and abusive language towards Psychologist Sarah Eddy and sexually harassing Eddy.

During the hearing on this citation on October 25, 2016, Jackson pled guilty to the obscene and

abusive language charge and the hearing officer found him guilty of sexual harassment.  ECF No.

58-1, p.81 (ex. 13).

      In his declaration, DOC Chief Hearing Examiner Zachary Moslak, attests based on his

review of the misconduct record that Jackson did not appeal to final review either Misconduct

B587295, which covered the same conduct as and superseded Misconduct B941034, or Misconduct

B969823.  ECF no. 58-1, pp. 68, 129 (ex. 23).  Jackson has offered no evidence to support a

contrary finding.   Therefore, the Court finds that no genuine dispute exists regarding Jackson's

failure to exhaust his administrative remedies as to Misconduct B587295, Misconduct B941034, and

Misconduct B969823, and the Defendants are entitled to summary judgment on Jackson's retaliation claim to the extent it is based on these three Misconducts. With exhaustion addressed, the Court now turns to the merits of Jackson's remaining retaliation claim based on Misconduct B591166.

### B. Retaliation

#### 1. Retaliation Legal Standard

To prevail on this remaining retaliation claim, Jackson must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum,* 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn,* 241 F.3d 330, 333-34 (3d Cir. 2001). If Jackson satisfies his burden, the Defendants may still prevail if they prove by a preponderance of the evidence that they would have taken the same action absent the protected conduct. *Rauser v. Horn*, 241 F.3d at 333-34. *See also Corliss v. Varner*, 247 Fed. Appx. 353, 355 (3d Cir. 2007).

An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). This is an objective inquiry. *See Bistrian v.* Levi, 696 F.3d 352, 376 (3d Cir. 2012). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* at 224 (internal quotation marks and citation omitted). The retaliatory conduct "need not be great in order to be actionable" but must be "more than *de minimus.*" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted).

Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). Importantly, however, "'[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

   2.   Retaliation Analysis

Jackson maintains that the Defendants in this action retaliated against him because he filed a prior lawsuit against O'Brien and Clark— *Jackson v. Captain Carter*, 1:16-cv-133 (W.D. Pa. 2016)— and accused Brown of sexual harassment in PREA complaints and grievances. Each adverse action upon which Jackson relies in support of this retaliation claim is addressed below.

      a.   Claim 1: Brown denied Jackson a visit to the recreational yard on one occasion, and Brown and O'Brien made statements to cause him to forgo recreational yard for several months.

Jackson asserts that Brown denied him recreational "yard" on September 2, 2016 in retaliation for Jackson's filing Grievance #631904 on June 22, 2016 and accusing him of acts of sexual harassment. ECF No. 58-1, p. 20. Jackson also alleged that Sgt. O'Brien "allowed me to get denied my yard by C/O Brown even after I showed Sgt. O'Brien" his previous sexual harassment complaint. *Id.* His grievance also includes a conclusory allegation that O'Brien conspired with Brown in retaliation for Jackson's pending lawsuit against him. *Id. See Jackson v. Captain Carter*, 1:16-cv-133) (W.D. Pa. 2016). At that time, the prison's investigation of Grievance #631904, which the prison had determined was a PREA complaint about Brown, was not complete. On August 7, 2017, Lt. Bashor determined that the allegation of sexual abuse was "unsubstantiated." ECF No. 58-1, pp. 15-16.

In an affidavit produced years after the fact, Jackson adds another reason for the denial of yard, new details, and new quotes he attributes to Brown and O'Brien.  His Affidavit says that on September 2, 2016, while Brown was conducting his strip search, Jackson was telling grievance coordinator Tharp that Brown was not supposed to be around him because of his PREA complaints.  "Upon hearing plaintiff convey this information to defendant Tharp," Jackson writes, "defendant Brown told plaintiff that he was denying him his morning yard."  ECF No. 78-1, p. 1, ¶ 3 (Jackson's Affidavit).  Once Brown and O'Brien took him back to his cell, Jackson showed O'Brien all the PREA complaints and retaliation grievances he had filed about Brown and explained that he believed this meant they should be separated.  O'Brien replied, "You should've thought about that before you filed that lawsuit against me and my guys. Take care of that lawsuit and I'll take care of Brown, till' [sic] then you're burned for yard!"  *Id.*  An affidavit from another inmate, Antonio Ortiz, also attributes this quote word for word to O'Brien.  ECF No. 78, Ex. 7, p. 9. Ortiz's affidavit also states that he witnessed Brown deny Jackson his yard time for reporting his sexual harassment.  *Id.*

Jackson's contemporaneous grievance about this incident, however, does not mention a conversation with Tharp or the direct quote he attributes to O'Brien.  *See* ECF No. 78-1, Ex. 2, p. 3 (Grievance #642817).   Jackson also says in the affidavit that he did not go to yard for months due to fear of being retaliated against by Brown.  ECF No. 78-1, Ex. 71, p. 4, ¶ 11 (Jackson Affidavit). On March 3, 2017, Jackson sent a notice to Superintendent Clark that he was afraid to go to yard because of Brown's presence during strip searches; however, the letter never said that he actually did *not* go to yard nor did it specify any yard days that he missed.  ECF No. 78, Ex. 32, p. 38. Additionally, the Court can find no evidence in any other exhibits submitted by Jackson or the Defendants that Jackson was denied more than one day of yard.  Thus, Jackson has demonstrated a

genuine dispute of material fact only that Brown denied him one day of yard on September 2, 2016. Nevertheless, Jackson's late attribution of statements to Brown support a possible inference that he would continue to deny Jackson yard privileges unless Jackson stopped filing or pursuing grievances against him.

The first element of a retaliation claim is not in dispute. The "filing of a grievance to complain about [a corrections officer's] behavior is constitutionally protected conduct." *Robinson v. Taylor*, 204 Fed. Appx. 155, 156 (3d Cir. 2006). Likewise, the filing of a lawsuit against prison officials is constitutionally protected conduct. *See Nifas v. Coleman*, 2012 WL 707063, at *5 (W.D. Pa. Feb. 9, 2012) *citing Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981) *abrogation on other grounds recog'd by Mack v. Yost*, 968 F.3d 311, 319 (3d. Cir. 2020).

Whether Jackson experienced an adverse action at the hands of Brown and O'Brien is a closer question. The United States Court of Appeals for the Third Circuit in *Burgos v. Canino* considered but did not decide whether denying an inmate a single one-hour recreation period constituted an adverse action. 358 Fed. Appx. 302, 307 (3d Cir. 2009). The *Burgos* court wrote, "Even assuming that [defendant corrections officer] deprived [plaintiff] of his recreation period (a contention that [defendant corrections officer] denied), there is evidence in the record that for the time period in question, [plaintiff] had ample opportunity to exercise when [defendant corrections officer] was not on duty…, such that any deprivation caused by [defendant corrections officer] did not rise to the level of an adverse action." *Burgos*, 358 Fed. Appx. at 307. The implication of this holding is that a denial of "yard" is an adverse action only if it had a material negative impact on the inmate's ability to exercise. At least one district court in this Circuit has cited *Burgos* for the proposition that "nor does occasional lack of exercise constitute adverse action." *Defreitas v. Montgomery Cnty. Correctional Facility*, 2010 WL 5584202, at *2-3, *10 (E.D. Pa. Aug. 31, 2010)

18

(granting motion to dismiss retaliation claim for occasional refusal to let plaintiff use the yard when crutches were not allowed in the yard) (*citing Burgos*, 641 F. Supp. 2d at 454–56).

By contrast, denying an inmate his hour of exercise in the prison yard for twenty-one days, "if proven—might well be sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *See Ashford v. Hawkinberry*, 2017 WL 4269493, at *12, *14 (W.D. Pa. Sept. 26, 2017). Instead of arguing that this did not amount to an adverse action, the defendants in *Ashford* disputed that they denied the inmate his exercise period. *Id.*, at *14. In response, the plaintiff produced affidavits attesting that the defendant corrections officers had made statements directly attributing their denial of yard privileges to the plaintiff's filing of grievances. Id., at *15. Based on the evidence in that case, the *Ashford* court held that a genuine dispute of material fact existed concerning whether the defendants denied plaintiff's yard access for twenty-one days and whether retaliatory reasons motivated any such denial. *Id.*, at *16.

Here, Jackson has only presented evidence that he was denied yard on one occasion, far short of the twenty-one days the court found sufficient in *Ashford*. It is questionable that a single denial of recreational yard would deter a person of ordinary firmness from exercising their First Amendment rights. *See Defreitas*, 2010 WL 5584202, at *2-3, *10. However, as noted, the record supports a possible inference that Brown intended Jackson to understand that he would continue to deny Jackson yard privileges until Jackson stopped filing or pursuing grievances against him. As in *Ashford*, Jackson has presented evidence in the form of statements that the denial of yard was intended by Brown to deter him from litigating his lawsuit and complaining about Brown's sexual harassment. *See* ECF No. 78-1, p. 1, ¶ 3 (Jackson's Affidavit); ECF No. 78, Ex. 7, p. 9, ¶ 2 (Antonio Ortiz's Affidavit). Thus, against Brown, the evidence is sufficient to create a genuine dispute of fact concerning the "adverse action" element of his retaliation claim against Brown.

The record is also sufficient to create a genuine issue of material fact sufficient to support the causation element of Jackson's retaliation claim against Brown. If a jury were to find that Brown made the statements that Jackson and Ortiz attribute to him, it could likewise find that his alleged retaliatory actions were motivated by Jackson's constitutionally protected conduct. The Court notes that absent such statements, the record would be insufficient to support causation. The time between Jackson's protected conduct and the retaliatory actions is too long to establish retaliatory motive on its own. Brown denied Jackson recreational yard two months and eleven days after Jackson grieved Brown's alleged sexual harassment, and even further after Jackson filed his previous lawsuit against O'Brien. For temporal proximity alone to show retaliatory motive, the time between the protected conduct and the adverse action cannot be more than a matter of days. *See Booze v. Wetzel*, 2015 WL 5173937, *13-16 (M.D. Pa. Sept. 2 2015) (collecting cases). The *Booze* court wrote that,

> [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, *see Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 & n. 5 (3d Cir. 2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of…wrongdoing, *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

*Id.*, at *14. The two months and eleven days between Jackson's sexual harassment grievance and Brown's denial of yard is too great to constitute circumstantial evidence of retaliatory motive. But, as explained above, the statements attributed to Brown, coupled with his asserted denial of yard privileges, are enough to support a genuine dispute of material fact over whether this constituted illegal retaliation.

The Court finds, however, that the evidence is insufficient to support this claim against O'Brien. While Jackson's and Ortiz's affidavits attribute a statement to O'Brien ostensibly linking Brown's denial of yard access to his filing of grievances and lawsuits and perhaps vicariously attributing Brown's denial to O'Brien, the record includes no evidence that O'Brien did anything to deny or limit Jackson's yard privileges. The evidence that Brown both made statements indicating a retaliatory motive and acted on them is enough for the claim against him to survive summary judgment. While the statement attributed to O'Brien may indicate an unwillingness to intervene in Brown's action, standing alone, it is not enough to support the "adverse action" element of a retaliation claim against him.

　　　　b. Claim 2: Brown called him names and threatened to kill him.

Jackson also alleged that Brown retaliated against him by calling him names and threatening to kill him. [7] The weight of legal authority holds that while name calling is offensive and unnecessary (and even counterproductive to sound prison administration and inmate rehabilitation), insults by themselves are not adverse actions to establish retaliation. But, threats of violence do constitute an adverse action for retaliation. Moreover, Jackson has established a genuine issue of material fact that Brown retaliated against him by threatening to harm him.

Jackson attests that, on October 4, 2016, Brown came to his cell door and said, "You need to stop telling on me and let me see your cock so this can be over with." ECF No. 78-1, Ex. 71, p. 3, ¶ 6 (Jackson's Affidavit). *See also* ECF No. 78, Ex. 8, p. 10 (Grievance # 648600). He called Jackson a "bitch" and a "rat" for filing PREA complaints. "Defendant Brown then told plaintiff that he kills rats when he has rodent problems and that plaintiff should withdraw those PREA

---

[7] The Defendants do not argue failure to exhaust on this claim because Jackson filed a grievance about it, which was rejected as dealing with a PREA matter, and forwarded to the Security Department and PREA Compliance Manager for review. ECF No. 56, p. 12 (DOC Brief in Support).

complaints if he doesn't want to be the next dead rat."  ECF No. 78-1, Ex. 71, p. 3, ¶ 6 (Jackson Affidavit). The affidavit of Antonio Ortiz corroborates Brown calling Jackson a bitch and a rat that day, and also includes almost word-for-word the quote about killing rats when he has rodent problems.  ECF No. 78, Ex. 7, p. 9, ¶ 3 (Antonio Ortiz Affidavit).

Ortiz also says that on October 6, 2016, while Brown was conducting Jackson's strip-search, Brown "called Jackson a 'bitch' again for filing grievances against him and PREA complaints.  He then told Jackson that the Hearing Examiner 'Ski' was going to give him a gang of time and he's going to keep writing him up, so 'Ski' can roof him!  He said this in front of the whole pod and Sgt. O'Brien."  ECF No. 78, Ex. 7, p. 9, ¶ 5.[8]  Jackson's Affidavit says that at an unspecified time, "Brown also publicly stated that he would kill plaintiff if plaintiff continued to report defendant Brown's sexual advances towards plaintiff."   ECF No. 78-1, Ex. 71, p. 3, ¶ 15 (Jackson's Affidavit).

The United States Court of Appeals for the Third Circuit has held that a district court properly dismissed a retaliation claim at screening based on a corrections officer's "name-calling and use of sexually explicit, offensive language."  *Sears v. McCoy*, 815 Fed. Appx. 668, 670 (3d Cir. 2020). "A prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under § 1983," the court wrote.  *Id.*, citing *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (explaining that mere threatening language and gestures of a custodial officer are not constitutional violations).  Thus, Jackson's evidence that Brown called him offensive names will not sustain a retaliation claim standing on its own.

---

[8] The Court notes that evidence that Brown threatened to file more misconducts against Jackson does not alone support a retaliation claim.  *See Burgos v. Canino*, 358 Fed. Appx. 302, 306 (3d Cir. 2009) (affirming district court grant of summary judgment on retaliation claim when corrections officer threatened to file misconduct against plaintiff inmate for refusing to comply with urinalysis testing) (*citing Maclean v. Secor*, 876 F.Supp. 695, 699 (E.D. Pa. 1995) (collecting cases)).

In contrast, a corrections officer's threat of violence against a prisoner can be an adverse action for the purposes of a First Amendment retaliation claim.  *See, e.g., Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (threat that officer would kill plaintiff if he filed more grievances was not *de minimis*); *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (threat of transfer to lock-down unit was adverse act sufficient to support viable retaliation claim); *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect"); *Pittman v. Tucker*, 213 Fed. Appx. 867, 870 (11th Cir. 2007) (per curiam) (threat that prison officials would "do 'something drastic' if [the prisoner] continued to file grievances," which "could easily be interpreted by an inmate as a threat of physical violence, either directly or thru [sic] deliberate inattention," was not *de minimis*).

The evidence in the record supports a genuine dispute of material fact over whether Brown threatened Jackson with physical violence in retaliation for his engaging in constitutionally protected conduct.  However, there is no evidence that any other defendant threatened to harm Jackson.  For liability in a 42 U.S.C. § 1983, the state actor must have played an affirmative part in the misconduct.  *See, e.g., Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986).  Therefore, summary judgment will be granted on this retaliation claim in favor of all defendants except Brown.

   c. Claim 3: Dr. Ziegler's sexual harassment report and Misconduct B591166 were false.

As previously discussed, Jackson exhausted only one of the four misconduct charges he challenges as retaliatory: Misconduct B591166.  Jackson's retaliation claim based on Misconduct B591166 fails, however, because the evidence does not support a finding that Dr. Ziegler issued it with a retaliatory motive and because substantial evidence supported Jackson's guilt.  Dr. Ziegler, a non-party, initiated this misconduct charge against Jackson on September 6, 2016.  ECF No. 58-1, p. 23 (ex. 4).  The record includes no evidence that she did so based on a retaliatory motive and, even if

she had such a motive, she is not party to this action.  The named Defendants' only personal involvement relative to this misconduct charge was in the grievance process.  Jackson asserts that Hearing Officer Szelewski treated him unfairly in the grievance process in retaliation for his filing of a lawsuit and grievances against Brown.  But Jackson ignores that his guilt and the procedural propriety of Szelewski's conduct of the misconduct proceeding were sustained at multiple levels of appeal, and Jackson offers no evidence that the non-parties involved in those appeals acted with a retaliatory motive.

Furthermore, even if the record had supported the retaliatory motive element of the claim, the Defendants have "provided adequate evidence that it would have otherwise issued" and that the misconduct was imposed "for legitimate penological reasons."  *See Corliss*, 247 Fed. Appx. at 355. Dr. Ziegler attested that Jackson "put his right hand inside his orange jumpsuit and began slowly moving his hand" during an interview on September 6, 2016.  ECF No. 58-1, Ex. 4, p. 23 (Misconduct B591166).  Perceiving that Jackson was engaging in a sexually suggestive activity, Dr. Ziegler terminated the interview and then filed the Misconduct charging Jackson with sexual harassment and indecent exposure.  *Id.*  Jackson pled not guilty to both charges.  *Id.*, p. 25.  At his hearing on September 12, 2016, he testified that he had a bee-sting or wasp-sting that was bleeding and infected and that because of his pain, he placed his hand in his pants.  Hearing Examiner Szelewski adjudged him guilty of the sexual harassment charge but dismissed the indecent exposure charge.  *Id.*  The Program Review Committee (non-defendants) denied his appeal, sustaining the charge and sanctions.  *Id.*, p. 28.

In Jackson's appeal to the Chief Hearing Examiner, he reasserted his bee/wasp sting explanation for his actions during Dr. Ziegler's interview.  As noted, Dr. Ziegler didn't believe this explanation and ended the interview.  Jackson claimed he was seen by the medical department, that

Nurse Wanda treated him with antibiotic ointment, alcohol pads, and bandages.  The Defendants point out that his medical records show no such thing.  ECF No. 56, p 17.  The Defendants submitted a page of Jackson's medical records—his Progress Notes—which show five visits to the medical department from June 27, 2016 to October 31, 2016.  ECF No. 58-1, Ex. 5, p. 34.  Indeed, the medical notes include no mention of bee stings or associated treatment.  *Id.*

Jackson also stated that Hearing Examiner Szelewski refused to allow him to call the corrections officer and Nurse Wanda as witnesses at his hearing.  *Id.*, p. 30.  Chief Hearing Examiner Joseph H. Dupont upheld the misconduct and denied his appeal.  Dupont found that Hearing Examiner Szelewski properly conducted the hearing and concurred with his factual findings.  *Id.*, p. 32.  Jackson received 30 days of solitary confinement as a disciplinary sanction for this misconduct.

Courts in the Third Circuit must "evaluate the 'the quantum of evidence' of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them."  *Watson*, 834 F.3d at 426.  In *Carter v. McGrady*, the Third Circuit held that, "[e]ven if prison officials were motivated by animus to jailhouse lawyers," where offenses are sufficiently clear and overt it is not for the court to say that the disciplinary action taken was retaliatory.  292 F.3d 152, 159 (3d Cir. 2002).  This was within the "broad discretion" afforded to prison officials.  *Id.* (citing *Thornburgh v. Abbott*, 490 U.S. 401, 403, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (quotations in original)).

Here, Dr. Ziegler's description of Jackson's behavior during the interview provided ample support for the sexual harassment misconduct charge against Jackson.  Dr. Ziegler is a non-defendant, and Jackson has not proffered a reason why she would have falsified the misconduct. "[A] misconduct report is legitimate so long as it is issued for 'reasons reasonably related to a legitimate penological interest.'"  *Williams v. Folino*, 664 Fed. Appx. 144, 148 (quoting *Rauser*, 241

F.3d at 334).  To establish a misconduct's legitimacy, the finding of misconduct must include "a meaningful written statement of the evidence relied on and the reasons for the action taken."  *Id.*, at 149 (quoting *Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982)).  In this instance, Szelewski included an adequate written statement of the evidence supporting Jackson's guilt of sexual harassment.  He wrote that he believed Dr. Ziegler's account over Jackson's, finding Jackson's explanation of itching a bee-sting less credible than Dr. Ziegler's explanation that he had engaged in sexually suggestive actions.  ECF No. 58-1, Ex. 4, p. 25.  The PRC reviewed both the procedures followed by Szelewski and his factual findings on appeal and sustained the charge and sanctions.  *Id.*, p. 28.  Additionally, Chief Hearing Examiner Dupont denied Jackson's final appeal, finding that Szelewski properly conducted the hearing and that his factual findings were supported by the evidence.  *Id.*, p. 32.  With this, the Defendants have established a "quantum of evidence" that supports the misconduct charge.  *See Williams*, 664 Fed. Appx. At 149.  Jackson's denials to the contrary are unavailing.

The sufficiency of the evidence to support the guilty finding against Jackson on the misconduct claim also precludes his retaliation claim Hearing Officer Szelewski.  At best, the evidence proffered by Jackson supports an inference that Szelewski acted with a mixed motive during the misconduct proceedings.[9]  This is not enough to support a viable retaliation claim.  *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir.2002); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001) (affirming summary judgment in favor of defendants on retaliation claim when "the quantum of evidence" concerning the prisoner's misconduct showed that he would face disciplinary action regardless of his protected activity).  *See also*, *Mearin v. Folino*, 654 Fed. Appx. 58, 61 (3d Cir. 2016) (applying the "some evidence" standard to the "same decision" defense and citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994) for the often-quoted proposition that a finding of "some evidence"

---

[9] The Court also notes that Szelewski's dismissal of the indecent exposure misconduct charge belies his assertion that Szelewski had prejudged his guilt based upon a retaliatory motive.

in support of a disciplinary determination "checkmates" a retaliation claim).  *But see, Watson,* 834

F.3d at 428 (Ambro, concurring) ("the Eighth Circuit's cases were wrongly decided and…, even if

that were not so, our precedent prevents us from importing them into our law.").

> d.  Claim 6: Prison officials refused to properly investigate Jackson's PREA
>     complaints.

This final retaliation claim requires little discussion.  The investigation of Jackson's PREA

complaint was conducted by Lt. Bashor, who is not a Defendant in this action.  Additionally,

Jackson directs much his criticisms of the adequacy of the PREA investigation at Tharp, the

Grievance Coordinator.  ECF No. 78-1, p. 5, ¶ 19 (Ex. 71: Jackson's Affidavit).  Although originally

named as a Defendant, all claims against Tharp were dismissed with prejudice pursuant to this

Court's March 22, 2019 Memorandum Opinion and Order on the Defendants' Partial Motion to

Dismiss.  ECF No. 39.   Further, none of the remaining Defendants had personal involvement in

the PREA investigation sufficient to support a retaliation claim.  *See Mincy v. Chmielewski*, 508 Fed.

Appx. 99, 104 (3d Cir. 2013) (holding that each individual defendant must have personal

involvement in the alleged retaliatory acts to support a claim).  Finally, the record does not support a

reasonable inference that the ultimate finding that Jackson's PREA complaint was "unsubstantiated"

was based upon anything other than facts developed during the investigation.  Accordingly,

summary judgment will be entered in favor of the Defendants on Jackson's retaliation claim to the

extent it is based upon alleged inadequacies in the investigation of his PREA complaint.

V.    Conclusion

Genuine disputes of material fact preclude summary judgment on (1) Jackson's retaliation

claim against Defendant Sissem arising out of his alleged monitoring and copying of Jackson's

correspondence, (2) Jackson's retaliation claim against Defendant Brown arising out his denial of

yard privileges to Jackson, and (3) Jackson's retaliation claim against Brown based on threats of

physical violence against Jackson.  Accordingly, Defendants' renewed Motion for Summary Judgment is therefore DENIED as to these three claims.  As to all other claims remaining in this action, no genuine issue of material fact remains for trial and the Defendants are entitled to judgment as a matter of law.  Defendants' Motion is GRANTED as to these claims.  All Defendants except Brown and Sissem shall be terminated from this action.  By separate order, the Court will schedule a hearing pursuant to *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013) to determine whether an appeal was a remedy available to Jackson following the denial of his Grievance # 707257 against Sissem.

ORDER

The Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.  Plaintiff may proceed on (1) Jackson's retaliation claim against Defendant Sissem arising out of his alleged monitoring and copying of Jackson's correspondence, (2) Jackson's retaliation claim against Defendant Brown arising out his denial of yard privileges to Jackson, and (3) Jackson's retaliation claim against Brown based on threats of physical violence against Jackson.  Summary judgment is granted in favor of all other Defendants on all other claims.

Entered this 16th day of March, 2021.

_____
RICHARD A. LANZILLO
United States Magistrate Judge

28