IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RHONSHAWN JACKSON, )<br>        Plaintiff   ) | Case No. 1:18-cv-00032-RAL (Erie) |
| )<br>v.   ) | RICHARD A. LANZILLO |
| )  | UNITED STATES MAGISTRATE JUDGE |
| SGT. O'BRIEN, et al.   ) | |
|         Defendants   ) | MEMORANDUM OPINION ON |
| )  | PLAINTIFF'S MOTION FOR |
| )  | RECONSIDERATION |
| )  | |
| )  | ECF No. 84 |

I.    Introduction

Plaintiff Rhonshawn Jackson seeks reconsideration of the Court's Memorandum Opinion at ECF No. 82, which granted in part and denied in part the Defendants' motion for summary judgment. Jackson's motion is GRANTED IN PART AND DENIED IN PART. The Court will amend its summary judgment order to permit Jackson to pursue a retaliation claim against Sgt. O'Brien for allegedly denying Jackson yard privileges and law library access. In all other respects, Jackson's motion is denied.

II.    Standard of Review

Although a district court has the "inherent power to reconsider prior interlocutory orders," *State Nat'l Ins. Co. v. Cty of Camden*, 824 F.3d 399, 406 (3d Cir. 2016), the purpose of this power is to correct manifest errors of law or fact or allow for the presentation of newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration normally must demonstrate at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest

1

injustice. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is also appropriate in instances where the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Rohrboach v. AT & T Nassau Metals Corp.*, 902 F. Supp. 523, 527 (M.D. Pa. 1995), *vacated in part on other grounds on reconsideration*, 915 F. Supp. 712 (M.D. Pa. 1996) (citation omitted). Such motions may not be used to reargue unsuccessful theories or argue facts or issues that were not presented to the court in the context of the previously decided matter. *Drysdale v. Woerth*, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). In other words, a motion for reconsideration is not a means to get a "second bite at the apple." *Kropa v. Cabot Oil & Gas Corp.*, 716 F. Supp. 2d 375, 378 (M.D. Pa. 2010). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D.Pa.1995) (citation omitted). And, while the standard for granting reconsideration of an interlocutory order is more liberal than for a final judgment, "the movant must still establish good cause for why the court should revisit its prior decision." *Qazizadeh v. Pinnacle Health. Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) (citing *Confer v. Custom Eng'g Co. Emp. Health Benefit Plan*, 760 F. Supp. 75, 77 (W.D. Pa. 1991)). "Each step of the litigation process should build upon the last and, in the absence of newly discovered, non-cumulative evidence, the parties should not be permitted to reargue previous rulings made in the case." *Confer*, 760 F. Supp. at 77 (citation omitted). This standard applies to an order which grants in part and denies in part a motion for summary judgment. *See Qazizadeh*, 214 F. Supp. 3d at 294 (order granting partial summary judgment is an interlocutory order).

III.     Analysis

Jackson argues that the Court improperly granted summary judgment on his retaliation claim against Hearing Examiner Szelewski based on his refusal to hear from Jackson's two witnesses at the misconduct hearing held about Jackson's sexual harassment of Dr. Ziegler, a non-party. ECF No. 84, p. 1. The Court's Opinion reasoned that the record evidence viewed in the light most favorable to Jackson showed that Szelewski may have acted with a mixed motive during the misconduct proceedings (based on some statements evincing retaliatory intent) but that the "quantum of evidence" adduced at the hearing in support of the sexual harassment misconduct charge was sufficient to sustain the charge. ECF No. 82, Opinion, p. 25-26 (citing *Watson v. Rozum*, 834 F.3d 417, 426 (3d Cir. 2016)). Jackson presents no newly discovered evidence in support of this claim. Instead, although Jackson's complaint squarely called this a "retaliation" claim, he reframes it as a claim that Szelewski violated his right to procedural due process under the Fourteenth Amendment.

Jackson relies on two Supreme Court cases as authority that Szelewski violated his right to call witnesses at his misconduct hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974) & *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584, 137 L.Ed.2d 906 (1997); ECF No. 84, p. 2. *Wolff* held that for inmates facing revocation of "good time credits" affecting their criminal sentences, prison officials must (in most circumstances) provide the inmate "advance written notice of the claimed violation," "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken," and the inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 564–66.

*Balisok* addressed an issue regarding the scope of relief available under 42 U.S.C. § 1983 when a prisoner challenges the validity of the procedures used to deprive him of good-time credits.

Construing Jackson's claim against Szelewski as one for a violation of his right to procedural due process, Szelewski is still entitled to summary judgment. To implicate protections under the Due Process Clause of the Fourteenth Amendment, a state actor must deprive the plaintiff of either a property interest or a liberty interest. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972). Jackson's motion asserts that Szelewski implicated a liberty interest when he imposed sanctions on him for the misconduct charge. The Supreme Court said in *Sandin v. Conner* that punishment other than the loss of good time credits constitutes a deprivation of liberty requiring due process protections only if the deprivation imposes an "atypical and significant hardship…in relation to the ordinary incidents of prison life." 515 U.S. 472, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995). The determination of what is "atypical and significant" is based on the range of conditions an inmate would reasonably expect to encounter. *See Asquith v. Dep't of Corrs*, 186 F.3d 407, 412 (3d Cir. 1999). In *Sandin* itself, the Court held that a 30 day punitive segregation in the prison was not an atypical or significant hardship for an inmate, so there was no liberty interest implicated, and thus, the protections of the Due Process Clause did not apply. *Sandin*, 487 U.S. at 487, 115 S. Ct. 2293.

Here, Szelewski did not find Jackson guilty of the indecent exposure charge but found Jackson guilty of "sexual harassment." ECF No. 58-1, p. 25 (Exhibit 4). Szelewski sentenced him to thirty days of disciplinary custody—a form of solitary confinement. *Id.* This is a sanction a prisoner would reasonably expect to encounter. *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (7 months solitary confinement was not an atypical or significant hardship); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (15 months administrative segregation). His is not an "atypical or

4

significant hardship" on a protected liberty interests which would trigger Due Process Clause protection under *Sandin*. Thus, Jackson has failed to demonstrate a basis for reconsideration of the Court's entry of summary judgment for Szelewski.

Jackson also seeks reconsideration of the Court's Opinion to allow him to proceed against Brown on a claim that he called him a "rat" and "a snitch." ECF No. 84, p. 3. The Court held that,

> Jackson also alleged that Brown retaliated against him by calling him names and threatening to kill him. The weight of legal authority holds that while name calling is offensive and unnecessary (and even counterproductive to sound prison administration and inmate rehabilitation), insults by themselves are not adverse actions to establish retaliation. But, threats of violence do constitute an adverse action for retaliation. Moreover, Jackson has established a genuine issue of material fact that Brown retaliated against him by threatening to harm him.

ECF No. 82, p. 21 (footnote omitted). Brown calling Jackson a rat and a snitch could be construed as a failure to protect claim under the Eighth Amendment. Inasmuch as this claim was not addressed in the Court's previous opinion, the Court will consider it now as an Eighth Amendment claim and grant Defendant Brown summary judgment on this claim. Such reconsideration is appropriate in instances where the court has "patently misunderstood a party…or has made an error not of reasoning but of apprehension." *Rohrboach*, 902 F. Supp. at 527.

The Eighth Amendment of the United States Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). This includes the general duty to "protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To state a viable failure-to-protect claim, the plaintiff must establish that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused

the plaintiff to suffer harm.  *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).  The standard for deliberate indifference is subjective; thus, the prison official "must actually have known or been aware of the excessive risk to inmate safety."  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

     Jackson's verified Complaint says that Brown called him "rat" for complaining about him to other DOC officials on October 4, 2016, at his cell door in front of another inmate.  ECF No. 17, ¶ 18.  At this same instance, Brown said, "he kills rats when he has rodent problems" and that he "should withdraw those complaints if he doesn't want to be the next dead rat."  *Id. See also* Ex. 71, p. 3, ¶ 6 (Jackson Affidavit).  Jackson also says that while he was in the prison yard on April 18, 2017, Brown called him a "rat" for filing PREA complaints against him.  ECF No. 17, ¶ 33.  It is unclear if anyone else was around.  Another instance supported by the record is that on April 6, 2017, Brown told inmate Erran Sonney that Jackson "has been snitching on me…" to upper management, calling him a "rat."  ECF No. 17, ¶ 32.  *See also* ECF No. 78, p. 41 (Ex. 35, Affidavit of Erran Sonney).  In all three instances supported by the record, it is clear even in the light most favorable to the non-moving party that Brown meant that Jackson was reporting to DOC officials about Brown's supposed misconduct, not that of another inmate.

     Being labeled a "snitch" or a "rat" can be a dangerous designation in prison.  *See, e.g., Easley v. Tritt,* 2021 WL 978815, at *13 (M.D. Pa. Mar. 16, 2021) (citing *Moore v. Mann*, 823 Fed. Appx. 92, 96 (3d Cir. 2020) (per curiam) (recognizing that "other circuits have held that prison officials' failure to protect an inmate labeled a 'snitch' constitutes deliberate indifference").  Finding that a prisoner had stated a failure to protect claim, the Court of Appeals for the Third Circuit has held that a prisoner was exposed to a substantial risk of harm when it became known to other inmates that he was cooperating with an FBI investigation into gang activity.  *Bistrian v. Levi*, 696 F.3d 352, 368–70

(3d Cir. 2012). Prison officials showed deliberate indifference to that substantial risk of harm when even though they knew he was facing threats from those other inmates, prison officials placed him in a locked recreation yard pen with them which resulted in an assault. *Id.* This Court has also held that a plaintiff stated a failure to protect claim when a corrections officer "was deliberately indifferent to [the plaintiff's] safety when he called Plaintiff a 'snitch' in front of other inmates….and told other inmates that Plaintiff was 'working with prison security.'" *Brown v. Shrader*, 2015 WL 5027510, at *3 (W.D. Pa. Aug. 25, 2015). This created a substantial risk of harm that other inmates would punish the plaintiff for cooperating with prison officials. *Id.* (citing *Bistrian*, 696 F.3d at 371). It is established that calling an inmate a snitch for complaining to corrections officers about another inmate when stated in front of other prisoners creates a substantial risk of harm from inmates seeking to punish that so-called snitch or keep him silent. *See Benefield v. McDowall*, 241 F.3d 1267, 1270-71 (10th Cir. 2001) (allegation that defendant spread rumors inmate was snitching on other inmates to prison investigations staff created substantial risk of harm).

Some courts have also held that labelling an inmate a snitch created a substantial risk of harm in contexts where it was ambiguous if the defendant meant that the inmate was snitching on prison officials or other inmates. *See, e.g., Rodriguez v. Hayman*, 2009 WL 4122251, at *7 (D.N.J. Nov. 23, 2009) ("An inmate being labeled a snitch creates a substantial risk of harm."). The Third Circuit concluded that there was "a genuine dispute regarding whether the defendants were deliberately indifferent to the risk of telling other inmates that Moore was gay, a pedophile, or a snitch." *Moore*, 823 Fed. Appx. at 96. The court in *Moore* relied on other circuit court of appeals decisions to conclude that "prison officials' failure to protect an inmate labeled a 'snitch' constitutes deliberate indifference." *Id.* (citing *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008) ("After all, who better knows the opprobrium and consequent effect thereof that attaches to the label of snitch than those

7

who work daily within the inmate population."); *Benefield*, 241 F.3d at 1271; *Northington v. Marin*, 102 F.3d 1564, 1567 (10th Cir. 1996)). Even though the plaintiff in *Moore* had not been assaulted, the court said that "an inmate need not wait until an actual attack occurs to obtain relief." *Id.* Moreover, it is a relevant consideration whether the plaintiff is in the presence of other inmates because an inmate is not put at a substantial risk of harm by being called a snitch with no one around; it is being around other inmates that makes a difference. *See Hendrickson v. Emer. Med. Servs*, 1996 WL 472418, at *5 (E.D. Pa. Aug. 20, 1996) (citations omitted).

*Moore* is distinguishable because in that case and those it relied on, the inmate was either accused in general of being a snitch or of snitching on other inmates and being a pedophile. Jackson's claim is that Corrections Officer Brown called him a snitch for filing complaints that he—a corrections officer—was sexually assaulting and harassing him. An officer complaining publicly that an inmate is snitching on him or other corrections officers presents a different situation from the above-cited cases; this does not, without more, create a substantial risk of serious harm to the inmate. While prisoners may be motivated to harm a fellow inmate who is or could be informing on them, that motivation for preserving inmate anonymity and solidarity does not exist when the inmate is accused of "snitching" to prison officials about a corrections officer or other prison official—DOC staff who the inmates so often view as opposed to their interests. *See Bistrian*, 696 F.3d at 368-70 (substantial risk of harm when inmates became aware through officers' sloppiness that plaintiff was informing on them to the FBI). *Cf. Williams v. Thomas*, 2013 WL 1795578, at *1, *5 (E.D. Pa. Apr. 29, 2013) (denying motion to dismiss failure to protect claim when plaintiff claimed defendant officer "called him a snitch and threatened to hurt him in front of about 20 to 30 other inmates" because the plaintiff was filing grievances about the officer, and "[t]hese inmates later

approached [plaintiff] and told him that he would be harmed if he kept writing grievances against [officer].").

Moreover, Brown was not deliberately indifferent because even if there was a substantial risk of harm to Jackson, there is no evidence in the record that Jackson feared an assault from another inmate because of this or even that Brown knew of such fear. *See Tabb v. Hannah*, 2012 WL 3113856, at *6 (M.D. Pa. July 30, 2012). Deliberate indifference requires that a prison official know of and disregard an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837, 114 S. Ct. 1970. The Defendants are entitled to summary judgment on this as a failure to protect claim under the Eighth Amendment.

Brown's references to Jackson as a "snitch" or "rat" also fail to support a retaliation claim because the record does not support the "adverse action" element of that claim. *See Watson v. Rozum,* 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn,* 241 F.3d 330, 333-34 (3d Cir. 2001)). Jackson contends he experienced an adverse action when Brown called him a snitch and a rat. An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). This is an objective inquiry. *See Bistrian*, 696 F.3d at 376. "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Id.* at 224 (internal quotation marks and citation omitted). The retaliatory conduct "need not be great in order to be actionable" but must be "more than *de minimus*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted). This is why the inability of this conduct to establish a failure to protect violation of the Eighth Amendment does not bar this as a retaliation claim *ipso facto*.

An inmate may experience an adverse action when a prison official calls him a snitch for complaining about other inmates. *Bistrian*, 696 F.3d at 371; *Brown*, 2015 WL 5027510, at *3. Calling an inmate a snitch may also be an adverse action where the context is ambiguous to a reasonable listener as to whether the official means that the inmate is snitching on other inmates or complaining about prison officials. *See Simmons v. Overmyer*, 2019 WL 7283318, at *7 (W.D. Pa. Dec. 27, 2019) (corrections officer "loudly accused [plaintiff] of being a snitch and a rat in front of other inmates immediately after learning that [plaintiff] had initiated a lawsuit against his previous correctional institution."); *Bracey v. Pa. Dep't of Corr.*, 2012 WL 750911, at *9 (W.D. Pa. Feb. 17, 2012) ("being publicly referred to as a 'snitch'" by a corrections officer is an adverse action). *Cf. Moore*, 823 Fed. Appx. at 96; *Rodriguez*, 2009 WL 4122251, at *7 ("An inmate being labeled a snitch creates a substantial risk of harm" for a failure to protect claim). But an inmate of ordinary firmness does not experience an adverse action when a prison official calls him a snitch for officially or unofficially complaining about other prison officials. The Court reaches this conclusion for the same reasons stated above that it does not amount to deliberate indifference for a failure to protect claim under the Eighth Amendment to call an inmate a snitch for complaining about prison officials. Prisoners' possible motivations to harm another inmate believed to be informing on them to protect themselves from discipline and maintain inmate unanimity is not relevant. Prisoners may even favor an inmate who actively points out prison officials' alleged misconduct.

Viewing the evidence in the light most favorable to the non-moving party, Jackson did not experience an adverse action when Brown referred to him as a snitch because, in each instance, it was clear to any objective listener that this was about Jackson's PREA complaints and grievances against Brown. This is not a situation where a prison official accused Jackson of snitching on other inmates or labelled him a snitch in ambiguous circumstances. The case of *Miller v. Trometter* provides

10

a useful comparison to illustrate what actions constitute adverse actions and which are not. 2012 WL 5933015, at *1-2, *7 (M.D. Pa. Nov. 27, 2012). In *Miller*, the court ruled that the plaintiff pleaded a *prima facie* retaliation claim when, after he had filed a grievance against a corrections officer, it was an adverse action for that officer to file an allegedly false misconduct against him. *Id.*, at *1-2, *7. Additionally, the court ruled that the plaintiff experienced an adverse action when the officer told several inmates that the plaintiff was a snitch for filing a grievance against her, which generated rumors that the plaintiff was a snitch in general, and threatened him with physical harm, including saying "someone needed to get him off the block" and telling his cellmate, "if you don't get him out of there [the cell], I will." *Id.* Soon after, two inmates attacked using a steel shank and caused the plaintiff injuries. *Id.*, at *2. The next day, an officer told the inmate she was glad they got the snitch. *Id.*

It was not enough in *Miller* that the official had told inmates that the plaintiff was a snitch for filing grievances against her, but it amounted to an adverse action when the officer encouraged physical harm against the purported snitch and spread rumors in general that he was a snitch, devoid of context. *See also Rivera v. Marcoantonio*, 153 Fed. Appx. 857, 859 (3d Cir. 2005) (after inmate-resident grieved officers' conduct, officers "encouraging other residents to take action against the 'snitch,'" amounted to an adverse action in combination with other retaliatory actions); *Freeman v. Miller*, 2011 WL 4591974, at *3–5 (M.D. Pa. Sept. 30, 2011) (denying motion to dismiss when officer told another inmate to stab the plaintiff because he was a rat and had filed lawsuits against prison staff). Indeed, the Court already ruled in the Opinion on summary judgment that Jackson stated a retaliation claim against Brown for Brown's threats to harm Jackson. The Court wrote,

> Jackson also alleged that Brown retaliated against him by calling him names and threatening to kill him. The weight of legal authority holds that while name calling is offensive and unnecessary (and even counterproductive to sound prison administration and inmate

11

> rehabilitation), insults by themselves are not adverse actions to establish retaliation. But, threats of violence do constitute an adverse action for retaliation. Moreover, Jackson has established a genuine issue of material fact that Brown retaliated against him by threatening to harm him.

*See* ECF No. 82, p. 21. Jackson has failed to demonstrate a genuine issue of material fact that Brown calling him a snitch and a rat amounted to retaliation, so his motion for reconsideration on this as a separate claim is denied.

Additionally, the Court will grant reconsideration and deny Defendant O'Brien summary judgment on Jackson's claim that O'Brien denied him yard privileges as retaliation for his previous lawsuit. In its previous Opinion, the Court found a genuine dispute of material fact that Brown had engaged in retaliation on this claim but granted summary judgment in O'Brien's favor. ECF No. 82, p. 21. On reconsideration, the court finds a genuine dispute of material fact that O'Brien was personally involved in the adverse action of denying Jackson yard privileges.

A defendant in a § 1983 action "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."[1] *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations removed)). It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). Allegations that broadly implicate multiple defendants without delineating

---

[1] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

individual conduct are legally insufficient. *See Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69-70 (3d Cir. 2015).

The record establishes a genuine dispute of material fact about O'Brien's involvement in denying Jackson yard when viewed in the light most favorable to the non-moving party. Affidavits from Jackson and inmate Antonio Ortiz say that on September 2, 2016, while Brown was strip searching him, Jackson was telling grievance coordinator Tharp that Brown was not supposed to be around him because of his PREA complaints. ECF No. 78-1, p. 1, ¶ 3 (Jackson's Affidavit); ECF No. 78, Ex. 7, p. 9 (Ortiz Affidavit). "Upon hearing plaintiff convey this information to defendant Tharp," Jackson writes, "defendant Brown told plaintiff that he was denying him his morning yard." *Id.* Once Brown and O'Brien took him back to his cell, Jackson showed O'Brien all the PREA complaints and retaliation grievances he had filed about Brown and explained that he believed this meant they should be separated. O'Brien replied, "You should've thought about that before you filed that lawsuit against me and my guys. Take care of that lawsuit and I'll take care of Brown, till' [sic] then you're burned for yard!" *Id.* On the one hand, this sounds like Jackson is trying attribute Brown's actions to O'Brien through supervisory liability, but "[l]iability may not be imposed under § 1983 on the traditional standards of *respondeat superior*." *Hepler v. Wetzel*, 2019 WL 1923004, at *5 (W.D. Pa. Apr. 30, 2019) (citing *Capone v. Marinelli*, 868 F.2d 102, 106 n. 7 (3d Cir. 1989)). On the other hand, a supervisor may be held liable only when "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago v. Warminster Tp.*, 629 F.3d 121, 129 (3d Cir. 2010) (citation omitted). Although it does not appear that O'Brien directed Brown's action, there is a genuine dispute of material fact whether O'Brien participated in or knew and acquiesced to the

alleged retaliation. For this reason, this retaliation claim for denying Jackson yard privileges may also proceed against O'Brien.

Jackson seeks reconsideration of other parts of the Court's Opinion on summary judgment, but for those claims, he has failed to demonstrate (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café ex rel. Lou-Ann, Inc.*, 176 F.3d at 677 (3d Cir. 1999). For those reasons, Jackson's other requests for reconsideration are denied.

Although not explicitly raised in the motion for reconsideration, the Court observed upon additional review of Jackson's verified complaint that he has stated a retaliation claim against corrections officer O'Brien which no party has addressed in their motions or briefing on the motion to dismiss or motions for summary judgment. Jackson said that on September 19, 2016, Jackson was scheduled for time in the law library, he asked O'Brien if he could go, and O'Brien told him, "When you drop that lawsuit against me and my guys you'll get your law library, until then you're burned." ECF No. 17, ¶ 17. Jackson had engaged in constitutionally protected activity by filing a previous lawsuit against O'Brien, there is direct evidence of retaliatory intent in the statement, and denying him access to the law library was an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah*, 229 F.3d at 225. Denying law library access is an adverse action. *See Murray v. Ennis*, 2012 WL 3962645, at *7-8 (W.D. Pa. Sept. 11, 2012) (noting jury instructions that denying an inmate law library access is an adverse action); *Simmons v. Overmyer*, 2019 WL 7283318, at *7 (W.D. Pa. Dec. 27, 2019) (citing *Williams v. Folino*, 2015 WL 1212951, at *9 (W.D. Pa. Mar. 17, 2015) (allegation of combination of threats, denial of law library, and misconduct filing constituted an adverse action); *Green v. Dep't of Corrs*, 2007 WL 9702669, at *11

(M.D. Pa. Feb. 23, 2007) (allegation of interference with law library access constituted adverse action on motion to dismiss); *Pressley v. Johnson*, 2006 WL 2806572, at *6 (denial of law library access in combination with other allegations constituted adverse action on motion to dismiss). *But see Boone v. Chesney*, 1994 WL 477670, at *1, *5 (E.D. Pa. Sept. 2, 1994) (granting motion to dismiss retaliation claim when defendants allegedly denied him access to the law library for one day as retaliation for filing previous lawsuits against prison officials because this "temporary suspension in his library privileges" was "arguably insufficient to support plaintiff's claim[] of…retaliation."). Jackson will be allowed to proceed with this claim of retaliation against O'Brien for denying him law library access.

IV.     Conclusion

Jackson's Motion at ECF No. 84 for reconsideration of the Court's Opinion at ECF No. 82 on the Defendants' motion for summary judgment is GRANTED IN PART AND DENID IN PART for the foregoing reasons. Jackson may proceed on the claims as specified in the Court's prior Opinion and on the following additional claim:

- Retaliation claims against Defendant O'Brien for denying him law library access and for denying him yard privileges.

Even though O'Brien was dismissed by the Court's Opinion and Order ECF No. 82, he is now reinstated as a live defendant. In all other respects, the motion for reconsideration is denied. A separate, revised judgment order follows.

Entered this 27th day of July, 2021.

RICHARD A. LANZILLO
United States Magistrate Judge