## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RHONSHAWN JACKSON, | ) | |
| Plaintiff | ) | Case No. 1:18-cv-00032-RAL (Erie) |
| | ) | |
| v. | ) | HON. RICHARD A. LANZILLO |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| SGT. O'BRIEN, et al. | ) | |
| Defendants | ) | OPINION, FINDINGS OF FACT, AND |
| | ) | CONCLUSIONS OF LAW |
| | ) | |

I.      Introduction

Following the Court's orders on Defendants' motion for summary judgment (ECF No. 67, 82, 91), two issues remained to be addressed regarding Defendants' affirmative defense that Plaintiff Rhonshawn Jackson (Jackson) had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. First, the Court had to consider whether the exhaustion defense barred Jackson's retaliation claim against Defendant Sissem arising out of his alleged interference with Jackson's mail. Second, the Court needed to consider whether that defense barred Jackson's retaliation claim against Defendant O'Brien arising out of his alleged denial of library access and yard privileges to Jackson. The Court identified this latter claim in connection with its review of Jackson's motion for reconsideration of its order on Defendants' motion for summary judgment. See ECF No. 84. Whether that claim was fairly embraced by Jackson's Amended Complaint was debatable, but on reconsideration, the Court construed his *pro se* pleading liberally and permitted him to pursue the claim. See ECF No. 90, pp. 14-15. Having allowed Jackson to pursue this claim, the Court also permitted Defendants to address the application of their previously asserted exhaustion defense to the claim.

The Court conducted an evidentiary hearing and heard argument on these issues on September 24 and October 15, 2021. The parties identified and submitted the complete grievance record regarding the two claims at issue. In addition, to the extent Jackson asserted that any failure to exhaust his administrative remedies was due to the unavailability of those remedies, the Court received evidence at the hearing pursuant to *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013).

Based on the evidence presented, the Court finds that Jackson has failed to exhaust his administrative remedies as to his claim that Sissem retaliated against him by interfering with his mail. Therefore, judgment will be entered in favor of Defendants on this claim. As for Jackson's retaliation claim against O'Brien based on denial of law library and yard access, the Court finds that prison officials rendered the grievance process unavailable and, therefore, Jackson's administrative remedies are deemed to have been exhausted as to this claim. Jackson may pursue this retaliation claim against O'Brien at trial along with his other claims that have survived summary judgment.

II.     Factual and Procedural Background

The parties are familiar with the facts and procedural history of this case. These are detailed in the Court's two opinions on Defendants' motion for summary judgment and the Court's opinion on Plaintiff's motion for reconsideration. *See* ECF Nos. 67, 82, 90. As stated in the Court's amended judgment order, Jackson currently has the following claims pending:

> (1) his retaliation claim against Defendant Sissem arising out of his alleged monitoring and copying of Jackson's correspondence, subject to the Court's later determination of Defendants' exhaustion defense regarding this claim,
>
> (2) his retaliation claim against Defendant Brown and Defendant O'Brien arising out of their alleged denial of Plaintiff's yard privileges,
>
> (3) his retaliation claim against Defendant Brown based on his alleged threats of physical violence against Jackson, and

(4) his retaliation claim against Defendant O'Brien for allegedly
denying him law library access.

ECF No. 91.  Claims one (1) and four (4) are the subject of the Court's present opinion on

exhaustion.

During the hearing on September 24 and October 15, 2021, Jackson testified on his own

behalf and Defendants presented the testimony of Lieutenant Tricia Basher, an SCI-Albion

employee.  The Court also received and admitted eight exhibits from the parties pertaining to

Jackson's grievances.  ECF Nos. 105, 107, 108.

III.     Burden of Proof and Standard of Review

The PLRA mandates that prisoners exhaust all available administrative remedies before

bringing a lawsuit concerning conditions of confinement.  42 U.S.C. § 1997e(a).  This exhaustion

requirement applies to all claims relating to prison life that do not implicate the duration of the

prisoner's sentence.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The failure of an inmate to exhaust

available administrative remedies is an affirmative defense that the defendant must plead and prove.

*Jones v. Bock*, 549 U.S. 199, 216 (2007); *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing

*Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)).  The only exception to the PLRA's mandatory

exhaustion requirement is that administrative remedies must be "available."  *Ross v. Blake*, 136 S. Ct.

1850, 1856–60 (2016).

Once a defendant properly raises exhaustion, the district court must consider it as a

threshold matter.  *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 304-05 (3d Cir. 2020) (citing

*Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *Rinaldi v. United States*, 904 F.3d at 265.  The exhaustion

requirement is not a mere technicality.  It is a federal law that federal district courts are required to

enforce.  *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000).

Because exhaustion "is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts," *Small*, 728 F.3d at 270-71, the court serves as "the finder of fact with respect to the defense that a plaintiff failed to exhaust available administrative remedies as required by PLRA." *Jackson v. Shouppe*, 2020 WL 3574645, at *2 (W.D. Pa. June 30, 2020). An evidentiary hearing is the appropriate mechanism to resolve factual disputes and decide the threshold issue of whether the plaintiff's claims are procedurally defaulted for failure to exhaust. *Small*, 728 F.3d at 270-271. *See also Fahey v. Sacks*, 2019 WL 266336, at *1 (W.D. Pa. Jan. 18, 2019). Therefore, the Court will first examine whether Jackson properly exhausted his grievances, and, to the extent the Court finds that he did not, it will determine whether administrative remedies were reasonably available to him.

IV.    Analysis

The following constitutes the Court's findings of fact and conclusions of law based on the evidence received at the hearing:

A. Jackson's claim against Sissem for retaliatory mail monitoring will be dismissed for failure to exhaust.

The Court first considers Jackson's claim that Sissem retaliated against him by monitoring, copying, and interfering with his outgoing mail. Jackson is asserting that Sissem's actions regarding his mail constituted acts of retaliation based on his engaging in constitutionally protected activities. Jackson produced Grievance # 707257 as evidence that he exhausted his administrative remedies as to this claim. Grievance # 707257 addresses the monitoring and interception of two letters Jackson sent to his mother. ECF No. 107-1, p. 11. At the evidentiary hearing, the Defendants argued that Jackson has failed to exhaust his retaliation claim against Sissem because: 1) the grievance did not name Sissem, and 2) the grievance failed to put the prison on notice that Jackson was raising a retaliation claim. As explained below, although Jackson procedurally defaulted this claim by failing

4

to identity Sissem in his initial grievance, this default was excused because Sissem himself initially reviewed and decided the grievance, and in doing so, was clearly on notice that his actions were the subject of the grievance.   However, the Court agrees with the Defendants' second argument that Jackson has failed to exhaust this claim because the grievance failed to put the prison on notice that Jackson was asserting that Sissem's actions with respect to his mail were retaliation for Jackson's prior protected activities.

Proper exhaustion under the PLRA requires that an inmate "complete the administrative review process in accordance with the applicable procedural rules." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford*, 548 U.S. at 88).   Individual prisons provide these procedural rules. *Jones*, 549 U.S. at 218; *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (determining whether "a prisoner has 'properly' exhausted a claim…is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances"). Thus, a court determines whether a plaintiff has properly exhausted administrative remedies according to the procedures and rules adopted by the plaintiff's correctional institution. *Spruill*, 372 F.3d at 230-31 (the "prison grievance procedures supply the yardstick for measuring procedural default."). As explained in the Court's prior opinions in this action, the Inmate Grievance Policy, DC-ADM 804, which provides the relevant grievance procedures for grievances not connected with a misconduct citation, is relevant here. *See* ECF No. 82, p. 8. *See also McClain v. Alveriaz*, 2009 WL 3467836, at *6 (E.D. Pa. Oct. 26, 2009) (citations omitted).

The DC-ADM 804 grievance system consists of three separate stages: initial review, appeal, and final review. First, within fifteen days of the incident, the prisoner is required to submit a written grievance for review by the facility manager or the regional grievance coordinator, who, in turn, must respond in writing within fifteen business days. Second, if the grievance is denied, the

inmate must submit a written appeal to the Facility Manager within fifteen working days, and again the inmate is to receive a written response within fifteen working days.  Finally, if the inmate remains dissatisfied following this second level outcome, he must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within fifteen working days, and then the inmate will receive a final determination in writing within thirty days.[1]  *Downey v. Pa. Dep't of Corrs.*, 968 F.3d 299, 305-06 (3d Cir. 2020).  An inmate has not properly exhausted the grievance until SOIGA issues its final determination.

The PLRA itself does not have a "name all defendants" requirement.  *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (citing *Jones*, 549 U.S. at 217).  But Section 11(d) of the DOC's grievance policy states that the inmate "shall identify individuals directly involved in the events."  *See Green v. Maxa*, 2020 WL 1249205, at *5 (W.D. Pa. Mar. 16, 2020); *Jackson v. Carter*, 813 Fed. Appx. 820, 823 (3d Cir. 2020).   Moreover, because the identification requirement is mandatory, "in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA."  *Williams v. Pa. Dep't of Corr.*, 146 Fed. Appx. 554, 557 (3d Cir. 2005).  Jackson failed to identify Defendant Sissem in Grievance # 707257.  ECF No. 107-1, p. 11.  This means that Jackson has procedurally defaulted this claim against Sissem.  *Williams*, 146 Fed. Appx. at 557 (failure to identify defendants by name in grievances "means that [plaintiff] failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA").

A prisoner's procedural default can be excused by the prison if prison administrators respond to the grievance "by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance."  *Spruill*, 372 F.3d at 234-35.  The Court of

---

[1] Policy Statement: Inmate Grievance System: DC-ADM 804, effective May 1, 2015, is available at: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf.

Appeals for the Third Circuit has repeatedly applied *Spruill* to excuse defaults when grievance responses acknowledged involvement of the defendants. *See Williams v. Beard*, 482 F.3d 637, 639-40 (3d Cir. 2007); *Robinson v. Johnson*, 343 Fed. Appx. 778, 782 (3d Cir. 2009); *Tenon v. Dreibelbis*, 606 Fed. Appx. 681, 687 n.5 (3d Cir. 2015). But where the inmate does not identify a defendant in the grievance and there is no indication in the record that prison administrators knew that the defendant was involved in the incident, the prisoner has failed to exhaust his administrative remedies. *Byrd*, 715 F.3d at 127; *Johnson v. Townsend*, 314 Fed. Appx. 436, 442-43 (3d Cir. 2008). The purpose of this stringent application of the exhaustion requirement is to alert the prison officials to a problem and allow the officials to remedy the problem before it is litigated in court. *Williams*, 482 F.3d at 640.

Although Sissem's response to the grievance did not expressly acknowledge his involvement in monitoring Jackson's mail, other documents in the record identify Sissem as the person who requested approval from Superintendent Clark on August 1, 2016 to monitor Jackson's mail. ECF No. 78, p. 45. A request to extend mail monitoring was also submitted on September 1, 2016.[2] *Id.*, p. 46. After Jackson filed his Grievance # 707257, Sissem was assigned as the grievance officer to conduct its initial review. Whether the grievance was assigned to Sissem because it related, at least in part, to his conduct, or simply by happenstance, there is no question he, as the prison official designated to review and consider the grievance, knew that his own conduct was at issue. ECF No. 105-1, p. 6. Given this, the purpose of the "identification" requirement of DC-ADM 804—to alert prison officials to a problem and allow them to remedy it before litigation—was satisfied. This finding is consistent with precedent applying the identification requirement of DC-ADM 804. For example, "[i]dentifying someone by position has been held to fulfill the DC-ADM 804's

---

[2] Evidence extrinsic to the grievance process may be considered by a court when determining whether a procedural default has been excused. *See Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007); *Smith v. Hayman*, 2012 WL 1079634, at *15 (D.N.J. Mar. 30, 2012), *aff'd*, 489 Fed. Appx. 544 (3d Cir. 2012).

identification requirement." *See Travillion v. Wetzel*, 765 Fed. Appx. 785, 789 (3d Cir. Apr. 8, 2019) (citing *Johnson v. Johnson*, 385 F.3d 503, 523 (5th Cir. 2004) (noting "a grievance can sufficiently identify a person even if it does not provide an actual name; functional descriptions and the like— *e.g.*, a reference to 'the guards in the shower room' on a certain date—would suffice)). *See also Diaz v. Palakovich*, 448 Fed. Appx. 211, 217 (3d Cir. Oct. 4, 2011)) (determining that inmate's identification of "mailroom staff," along with grievance officer's subsequent interview of mailroom employees, obviated any procedural default that may have resulted from failure to specifically name mailroom employees). Courts have also held that a plaintiff's failure to identify individuals in his grievance is excused where the prison conducts an internal investigation and relies upon that investigation in its grievance response. *See Chaney v. Bednard*, 2020 WL 7864202, at *4–6 (W.D. Pa. Dec. 31, 2020); *Martin v. Secretary of Corrections*, 2018 WL 1158250, at *4 (M.D. Pa. Mar. 5, 2018) (defendant knocked unconscious during assault excused from default for failure to identify defendants when they each filed reports afterwards identifying them as participants in the incident); *Schultz v. Doher*, 335 F.Supp.3d 177, 185 (D. Mass. 2018) (excusing plaintiff's default for failure to identify when officers involved in use of force incident wrote incident reports summarizing the incident). The Third Circuit has also held, citing *Spruill*, that prison officials acknowledged that individuals "were fairly within the compass of the prisoner's grievance" when their grievance response referenced an informal internal investigation. *See Diaz v. Palakovich*, 448 Fed. Appx. 211, 216 (procedural default against mailroom employees was excused when the grievance response "indicat[ed] that the grievance officer went 'to the Mailroom to discuss the issue with Mailroom staff.'").

Under these circumstances, the Court concludes that Sissem's role as the grievance officer designated to review a grievance about his own conduct excused Jackson's procedural default in failing to identify him.[3]

The Court now turns to the Defendants' alternative argument that the contents of the grievance failed to put the prison on notice that Jackson was raising a retaliation claim. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Regarding the facts an inmate must include in a grievance in the Pennsylvania DOC, the policy DC-ADM 804 provides:

> The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
> a. The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.
> b. The inmate shall identify individuals directly involved in the event(s).
> c. The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.

DC-ADM 804, § 1(A)(11). Restated slightly, an inmate's grievance must include facts sufficient to place prison officials on fair notice of the claim or claims to be investigated. This conclusion is

---

[3] At the hearing, Jackson argued that Sissem's initial review and decision of his grievance involved a conflict of interest that should excuse any failure on his part to exhaust the claim. While it does appear that Sissem violated the applicable policy by reviewing a grievance that challenged his own conduct, the remedy Jackson proposes does not necessarily follow. DC-ADM 804, § 1.C.3, prohibits a staff member who is "directly involved *in* or named as the subject of the grievance" from serving as the grievance review officer. (emphasis in original). *See also Bohm v. Straw*, 2013 WL 85273, at *9 (W.D. Pa. Jan. 8, 2013) (cited in Due Process context unrelate to issues at bar); *Tarselli v. Harkleroad*, 2012 WL 603219, at *7 (W.D. Pa. Feb. 23, 2012) (same). Even so, the creation by a state prison of rules or procedures does not imbue a prisoner with a constitutional right to their enforcement. *See Lee v. Schrader*, 2014 WL 2112833, at *4 (W.D. Pa. May 20, 2014) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension") (citing *United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981)) (other citations omitted). Here, Sissem's policy violation relates only to excusing Jackson's failure to identity Sissem in the grievance. *See Spruill*, 372 F.3d at 234-35. It cannot excuse any failure on his part to raise information sufficient to notify officials that he was grieving a retaliation claim. *See infra*, pp. 10–12.

9

consistent with the Court's discussion of the purpose of the "identification" requirement to provide officials with sufficient information to alert them to the claim presented before the prisoner pursues litigation on the claim. *See Travillion v. Wetzel*, 765 Fed. Appx. 785, 789 (3d Cir. 2019) (quoting *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007)).   This analysis focuses on the facts presented by the grievance, not whether the inmate correctly labeled his claim or claims.

In this litigation, Jackson asserts that Sissem's mail monitoring activities were taken in retaliation for his prior exercise of his constitutionally protected rights.  A First Amendment retaliation claim in the prison context arises when a prisoner engages in constitutionally protected conduct, prison officials take an adverse action against a prisoner, and the constitutionally protected conduct was a substantial or motivating factor in prison officials' adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 331 (3d Cir. 2001).

Jackson's grievance alerted prison officials to the following:

> I am writing this grievance because on 11/6/17, through discovery from my civil cases, I was sent part of an investigation file on me by the Pa. D.O.C., which contains copies of outgoing mail that I sent to my mother.  I was never given an 802 at SCI-Albion to notify me that I was under "any investigation."  Furthermore, I have written proof from Capt. Carter that SCI-Forest's investigation was over.  Per DCADM 803 and 802, permission from the Regional Dept. Sec. must be given before my outgoing mail can be opened and copied.  I have copies of (2) letters to my mother in which I was complaining about being retaliated against by SCI-Albion employees.  I want punitive damages for this First Amendment violation.  I also want this investigated.

ECF No. 107-1, p. 11.

Jackson's grievance did not describe Sissem's conduct as retaliatory.  While it is unnecessary for a plaintiff to use the word "retaliation" in his grievance to properly raise the claim,[4] he must include enough information to put prison officials on notice that the substance of the issue is retaliation.  Jackson has failed to do so here.  *Cf. Kloss v. SCI-Albion*, 2018 WL 4609144, at *7-8 (W.D. Pa. Aug. 15, 2018), *report and recommendation adopted*, 2018 WL 4599814 (W.D. Pa. Sept. 25, 2018) (dismissing four claims for failure to exhaust when "none of these issues or claims [we]re presented in Plaintiff's grievance.").  Jackson did not identify any constitutionally protected conduct or state any facts to support a causal connection between constitutionally protected conduct and Sissem's mail monitoring activities.  Although Jackson's grievance referred to the First Amendment, the only reasonable reading of this reference in the context of the entire grievance is that it asserted that the monitoring of his mail was, in and of itself, a violation of his First Amendment right to correspond with an individual outside the prison.  Jackson never described the monitoring of his mail as retaliatory or identified any protected activity that would intimate the nature of the claim as one for retaliation.  Furthermore, Jackson's reference to DOC policy DC-ADM 803, which sets out the procedures for authorization of mail monitoring, would have reinforced officials' understanding that this was the subject of his grievance.[5]

Jackson omitted any facts in Grievance # 707257 to alert prison officials that he was asserting a retaliation claim against Sissem.  That grievance, therefore, did not serve to initiate or exhaust Jackson's administrative remedies as to that claim.  "Exhaustion is considered separately for each claim brought by an inmate, and if a complaint includes both exhausted an unexhausted claims, courts will dismiss the latter but not the former."  *Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir.

---

[4] The reference to "retaliation" in the grievance was a description of the substance of Jackson's previous letters to his mother, not to the subject of his current grievance.

[5] Jackson has not asserted a Fourteenth Amendment procedural due process claim in this lawsuit based on the interception of his mail.

2019) (citing *Jones*, 549 U.S. at 219-20).  Because retaliation is a distinct claim, it must be grieved or

identified separately from other issues.  *See White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990).  *See*

*also Jackson v. Shouppe*, 2020 WL 3574645, at *7 (W.D. Pa. June 30, 2020).  Accordingly, Jackson's

claim that Sissem monitored and interfered with his mail as acts of retaliation because of his prior

protected actions will be dismissed for failure to exhaust.[6]

        B.   Prison officials excused Jackon's failure to exhaust his grievance regarding O'Brien's
           alleged retaliatory denial of law library access.

The Defendants argue that Jackson failed to exhaust his claim that Defendant O'Brien

denied him law library access as an act of retaliation on September 19, 2016.  Two grievances are

relevant to this claim.  Jackson filed Grievance # 644414 on September 18, 2016.  ECF No. 105-1,

p. 3.  Among other things, this grievance asserted that O'Brien denied him law library access on

unspecified occasions.  Defendants conceded at the hearing that this grievance was incorrectly

labelled a Prison Rape Elimination Act (PREA) complaint and rejected as such.  DOC policy does

not require prisoners to appeal or otherwise exhaust the denial or dismissal of a PREA complaint

through the DC-ADM 804 process.  Thus, by characterizing this grievance as a PREA complaint—

albeit incorrectly—prison officials excused Jackson's failure to appeal its dismissal.

However, Jackson's complaint in this action challenges O'Brien's denial of law library access

on September 19, 2016.  Jackson's Grievance # 644414 was filed one day before this alleged denial.

At the evidentiary hearing, Jackson presented a second grievance form specifically challenging

---

[6] Jackson did not appeal Grievance # 707257 to final review.  *See* ECF No. 58-1, p. 131 (Declaration of Keri Moore, Assistant Chief of SOIGA).  Jackson admitted this at the evidentiary hearing.  The Court's conclusion that Jackson failed to exhaust his retaliation claim against Sissem based on its substance obviates any need to reach the issue of the "availability" of Jackson's appeal remedies as identified in this Court's opinion on summary judgment at ECF No. 82, pp. 11-12.  Nevertheless, the Court finds that the Defendants, through the testimony of Lieutenant Tricia Basher, which the Court credits, refuted Plaintiff's assertion that the denial of Grievance # 707257 was misdirected to the wrong correctional institution.  Accordingly, the Court further finds that Jackson's administrative remedies, including his appeal remedies, were reasonably available to him as to Grievance # 707257, and that his failure to appeal the denial of that grievance was a further failure on his part to exhaust his retaliation claim against Sissem.

O'Brien's alleged denial of law library on September 19, 2016 as an act of retaliation. Jackson testified that he submitted this grievance by handing it to a corrections officer who took three copies and returned the goldenrod copy to Jackson. Jackson further testified that the officer placed the three copies in the RHU's grievance box, but he never received a response. The DOC offered testimony that it has no record of Jackson's submission of this grievance. The Court finds that Jackson's testimony to be credible on this point. While the Court does not find that any prison official intentionally misdirected, destroyed, or tampered with Jackson's grievance, the evidence supports that he attempted to pursue the grievance process concerning this claim but through inadvertence or mistake, his grievance was not processed.

Jackson explained that prison officials' failure to respond to the grievance would not be unusual under the circumstance because his grievance was similar in nature to his Grievance #644414. There is some support for this position. DC-ADM 804 states, "Any grievance that has been addressed or is currently being addressed will not be addressed in another grievance." DC-ADM 804 § 1(A)(12). Thus, although incorrect, it was reasonable for Jackson to assume that he did not receive a response to his second grievance due to prison officials considering it duplicative of Grievance #644414.

Because the Court credits Jackson's testimony that he submitted the second grievance, the DOC's failure to respond to it rendered the grievance process unavailable. The Court of Appeals for the Third Circuit instructs that "[a]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *See Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019). When the grievance process is unavailable, the prisoner is deemed to have exhausted his administrative remedies for purposes of

the PLRA. *Ross*, 136 S. Ct. at 1856–60. Accordingly, the Defendants' affirmative defense of failure to exhaust administrative remedies as to Jackson's claim against O'Brien based on his alleged denial of law library access will be denied.

V.      Conclusion

Based on the record, the Court finds that Defendants have met their burden of proof that Jackson failed to exhaust his available administrative remedies as to his retaliation claim against Sissem. As to his claim that O'Brien retaliated against him by denying law library access, Jackson met his burden of production to demonstrate that prison officials rendered the grievance process unavailable, thereby excusing his failure to exhaust his administrative remedies regarding this claim, and the Defendants have failed to meet their burden of proof on their affirmative defense regarding the retaliation claim against O'Brien.

A supplemental judgment order addressing these claims will follow.

Entered this 2nd day of November, 2021.

HON. RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE